IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| CHARLIE STACY and CLIFFORD ALLEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JENNMAR CORPORATION OF VIRGINIA, INC., JENNMAR CORPORATION OF EAST VIRGINIA, INC., JENNMAR CONSTRUCTION TOOLS, LLC, and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 1:21-cv-00015-JPJ-PMS |

**DEFENDANTS' RESPONSE IN OPPOSITION TO NAMED PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY THIS MATTER AS A COLLECTIVE ACTION AND FOR A COURT-AUTHORIZED NOTICE TO BE ISSUED UNDER SECTION 216(B) OF THE FAIR LABOR STANDARDS ACT**

Defendants Jennmar Corporation of Virginia, Inc. ("Jennmar Virginia"), Jennmar Corporation of East Virginia, Inc. ("Jennmar East Virginia"), Jennmar Construction Tools, LLC, ("Jennmar Construction Tools") and Does 1 through 20 (collectively, "Defendants"), by and through their undersigned counsel, file this Response in Opposition to Named Plaintiffs' Motion to Conditionally Certify This Matter as a Collective Action and For a Court-Authorized Notice to Be Issued Under Section 216(B) of the Fair Labor Standards Act ("Motion"). For the reasons stated below, Defendants respectfully submit that Plaintiffs' Motion should be denied in its entirety.

## I. SUMMARY OF THE ARGUMENT IN OPPOSITION

Named Plaintiffs Charlie Stacy ("Stacy") and Clifford Allen ("Allen") (collectively, "Plaintiffs") are former employees of Defendant Jennmar Virginia who worked at its Cedar Bluff,

Virginia facility ("Cedar Bluff Facility"). Plaintiffs have brought this action against all Defendants alleging violations of the Federal Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and the Virginia Wage Payment Act, Va. Code § 40.1-29 *et seq*. ("VWPA"). Plaintiffs ask this Court to certify a collective of Defendants' current and former employees. However, in support of this request, Plaintiffs muster only their own bare-bones affidavits in which they can merely speculate as to alleged policies and practices implemented by separate companies, enforced by separate supervisors, applicable to employees located in separate facilities at which Plaintiffs never worked.

For certification of a collective action, Plaintiffs must shoulder the burden to make a factual showing that they and the other individuals they purport to represent are sufficiently "similarly situated" to create efficiencies for collective treatment of their claims. *Andreana v. Virginia Beach City Pub. Sch.*, No.: 2:17-cv-574, 2019 WL 1756530, at *2 (E.D. Va. Apr. 19, 2019). However, Plaintiffs' attempt to bind together indicators of similarity with mere speculation cannot satisfy even their minimal burden at this stage of the litigation.

First, Plaintiffs have failed to put forth any evidence that they were employed by any entity or person other than Jennmar Virginia. In fact, Plaintiffs produced paystubs that contradict their conclusory contentions and instead establish that they were employed only by Jennmar Virginia.

Second, Plaintiffs have failed to sufficiently identify a common policy or practice that violates the FLSA. The time rounding policy alleged by Plaintiffs is neutral and lawful on its face, and Plaintiffs offer no explanation regarding how it may be illegal.

Third, Plaintiffs have failed to identify any evidence that a common policy or practice was implemented by each Defendant and enforced by individual supervisors at three separate facilities operated by three separate companies. To the contrary, Plaintiffs allege that individual supervisors

ordered deviations from written policy regarding compensatory time and clocking-in requirements by threatening employees who followed established policy. Thus, this case is improper for collective action treatment because the allegations cannot be adjudicated without significant individual inquiry.

Finally, in the event this Court conditionally certifies a collective action, it should significantly modify Plaintiffs' proposed Notice of Pending Lawsuit ("Notice") and Consent to Join Collective Action ("Consent") forms. Plaintiffs' proposed notice documents are inappropriate and require significant modification before distribution to any prospective opt-in plaintiff.

For all these reasons, the Court should deny Plaintiffs' Motion.

## II. FACTUAL BACKGROUND

In support of their Motion, Plaintiffs submitted nearly identical affidavits alleging certain policies pertaining to timekeeping and rounding consistent throughout the Defendants' operations, despite having personal knowledge only of Jennmar Virginia's Cedar Bluff Facility. Those affidavits fail in myriad ways to meet their burden.

### A. Plaintiffs Fail to Present Any Evidence That They Were Employees of All Defendants.

The Complaint alleges that during the period of October 2018 through March 29, 2021, Stacy was employed by Defendants as a Production Worker and later as a Crane Operator. ECF-1 at ¶ 15. The Complaint also alleges that during the period of October 2018 to November 2020, Allen was employed by the Defendants in the position of Production Worker. *Id*. at ¶ 16. The Complaint further alleges that Plaintiffs "are unaware of the true names or capacities of the Defendants sued herein, under the fictitious names DOES 1 through 20, but will seek leave of this Court to amend this Complaint and serve such fictitiously named Defendants once their names and capacities become known." ECF-1 at ¶ 17.

Plaintiffs' supporting affidavits dated July 28, 2021, attached to their Memorandum of Points and Authorities in Support of their Motion, (ECF-28), allege that they "worked for Defendants Jennmar Corporation of Virginia, Inc., Jennmar Construction Tools, LLC, and Does 1 through 20…" Memorandum at Ex. A, ¶ 1; Ex. B, ¶ 1. Plaintiffs' supporting affidavits also allege that they worked in Defendants' Cedar Bluff Facility during their employment and that, "Based on the information on my pay stubs and tax documents and other information provided throughout my employment, my understanding was that Defendants were my employers." Memorandum at Ex. A, ¶ 1; Ex. B, ¶ 1. Prior to the filing of the instant Motion, on July 14, 2021, Plaintiffs, as part of their initial disclosures under Federal Rule of Civil Procedure 26(a)(1), produced 67 pages of Stacy's paystubs dating from October 21, 2019 through January 10, 2021. Exhibit 1, Plaintiff's July 14, 2021 Production of Documents. Each paystub is issued on behalf of "Jennmar Corporation of Virginia INC" and does not name or identify any other entity. *See id*. at PLTF0001-PLTF0067.

### B. Plaintiffs Allege Only That They Were Employed in Jennmar Virginia's Cedar Bluff Facility under One Supervisor.

Stacy and Allen's affidavits allege that as Production Workers, their job responsibilities included "assisting in the assembling and manufacturing of various products, parts, and materials used in roof control, including pans, bolts and bars." Memorandum at Ex. A, ¶ 2; Ex. B, ¶ 2. Stacy and Allen's affidavits each allege that they only "worked in Defendants' Cedar Bluff facility". *Id*. at A, ¶ 1; Ex. B, ¶ 1. Stacy's affidavit also alleges that his job responsibilities as a crane operator included "operating various cranes to unload trucks with steel rebar and steel coils." *Id*. at Ex. A, ¶ 3. Additionally, Plaintiffs' affidavits allege that they each reported to second shift supervisor Tim Stiltner. *Id*. at Ex. A, ¶ 7; Ex. B, ¶ 6. Further, Plaintiffs' affidavits allege that they were required to arrive prior to the start of their shift to perform various essential duties which included "getting and completing paperwork, including safety sheets and checklists; putting on personal

protective equipment PPE, including safety glasses, gloves, and cut-resistant Kevlar sleeves; checking the machines, preparing tools, setting up the machines, and ensuring my work area was clean." Memorandum at Ex. A, ¶ 6; Ex. B, ¶ 5. There are no allegations that Plaintiffs ever worked in any other facility operated by other Defendants, or that they witnessed or received direction from supervisors of other Defendants.

**C. Plaintiffs Fail to Allege a Common Policy or Plan in Violation of the FLSA.**

Plaintiffs' affidavits further allege that Stacy and Allen would arrive at the Cedar Bluff Facility 20 minutes prior to the start of a shift and that Stiltner "would come into the break room, hand us various pieces of paperwork, and instruct us on what each of us should be doing during our shifts." Memorandum at Ex. A, ¶ 7; Ex. B, ¶ 6. Plaintiffs' affidavits then allege that they were "typically required to start doing work approximately twenty (20) minutes prior to the start of my shift, including reviewing paperwork and receiving instructions from my supervisor, my coworkers and I were told by Defendants, including Defendants' Human Resources department that we would be disciplined if we clocked in earlier than seven (7) minutes before the scheduled start time of our shifts, or clocked out before the scheduled end time of our shifts." *Id*. at Ex. A, ¶ 8; Ex. B, ¶ 7. Plaintiffs' affidavits also allege that "while my coworkers and I were performing approximately twenty minutes of pre-shift-work for Defendants each workday, we could only clock in up to seven (7) minutes early, or otherwise face termination." *Id*.

Plaintiffs' affidavits further allege "even though my coworkers and I were instructed to clock-in up to seven (7) minutes earlier than our scheduled shift, we were not compensated for this additional time, due to Defendants' time rounding policy of rounding employees' time in fifteen (15) minute increments." *Id*. Plaintiffs' Memorandum alleges "if an employee had a scheduled start time of 2:00 P.M. for his shift, yet clocked in eight (8) minutes early, Defendants' timekeeping

system would round this employee's start time down to 1:45 P.M." Memorandum at Ex. A, ¶ 8; Ex. B, ¶ 7. Additionally, "if this same employee clocked in seven (7) minutes early, Defendants' timekeeping system would round this employee's start time up to 2:00 P.M." *Id*. Stacy and Allen's affidavits further allege "Defendants viewed me and all other employees as a similar workforce, regardless of specific position, department or facility location," though they provide no factual recitation in support of this allegation. *Id*. at Ex. A, ¶ 12; Ex. B, ¶ 11. Plaintiffs' Motion alleges that Defendants' Virginia facilities are located in Cedar Bluff, Bristol, and Rich Creek. *Id*. at p. 3.

**D. Jennmar Virginia's Policies Are Lawful.**

Jennmar Virginia's Cedar Bluff, Virginia campus, consists of three separate buildings, each managed by individual Plant Managers. Greg Ratcliff, a Plant Manager at Jennmar Virginia's Cedar Bluff Campus, manages each shift at the facility located at 470 Wardell Industrial Park Road, Cedar Bluff, Virginia ("470 Wardell Industrial Park Road"). Exhibit 2, August 25, 2021, Declaration of Greg Ratcliff at ¶ 2. Ratcliff does not manage any employees working from any other building, for any other company, other than the employees working at Jennmar Virginia's facility located at 470 Wardell Industrial Park Road. *Id*. at ¶ 3.

Ratcliff, in his role as a Plant Manager supervised Stacy and Allen during their employment with Jennmar Virginia. *Id*. at ¶ 4. Stacy and Allen were assigned to the building located at 470 Wardell Industrial Park Road and at no time were they assigned to any other building. *Id*. Ratcliff testified in his Declaration that to his knowledge, every employee at 470 Wardell Industrial Park Road as well every employee working out of Jennmar Virginia's Cedar Bluff Campus is an employee of Jennmar Virginia and no other entity employs or exercises control over the employees working at Jennmar Virginia's Cedar Bluff Campus. *Id*. at ¶ 5.

Additionally, Ratcliff testified that at no time did he assign Stacy, Allen, or any other employee to perform work off the clock, and he did not instruct Stacy, Allen, or any other employee not to clock in when beginning to work duties or to otherwise not accurately record their working time. Ex. 2 at ¶¶ 6-7. Moreover, at no time did Ratcliff instruct Stacy, Allen, or any other employee that they would face discipline, discharge, or any other punishment for accurately recording their working time. *Id*. at ¶¶ 7-8. Ratcliff has never heard of any other Jennmar Virginia supervisor or human resources professional who instructed any employee to perform work off the clock, to inaccurately record their working time, or to threaten punishment for accurately recording working time. *Id*. at ¶ 9.

**III. ARGUMENT**

Under the FLSA, a named plaintiff may pursue a collective action on behalf of other "similarly situated" employees, who become part of the action only upon filing a written consent. *See* 29 U.S.C. § 216(b):

> An action . . . may be maintained against any employer . . . by any one or more employees for and [o]n behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Thus, whether a group of plaintiffs may proceed collectively under the FLSA turns on whether they are "similarly situated" to one another. *Choimbol v. Fairfield Resorts, Inc*., 475 F. Supp. 2d 557, 563 (E.D. Va. 2006).

In determining whether to permit a FLSA claim to proceed as a collective action, district courts within the Fourth Circuit have uniformly employed a two-step inquiry in deciding whether to certify a collective action under the FLSA. *Andreana*, 2019 WL 1756530, at *2-3. First, upon a minimal evidentiary showing that a plaintiff can meet the substantive requirements of 29 U.S.C. §

216(b), a plaintiff may proceed with a collective action on a provisional basis. Second, following discovery, the court engages in a more stringent inquiry to determine whether the plaintiff collective is "similarly situated" in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action. *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007).

The FLSA does not define "similarly situated," and the Fourth Circuit has not established a standard for this term in the context of a FLSA collective action. *Choimol*, 475 F. Supp. 2d at 562. Instead, courts have determined whether plaintiffs are similarly situated on an *ad hoc* basis looking at a variety of factors. *Andreana*, 2019 WL 1756530, at *3 (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001)). For example, the Tenth Circuit Court of Appeals has found that individuals are similarly situated in the context of the ADEA "when they (1) have dealt with the same supervisor; (2) were subjected to the same work standards; and (3) had engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Andreana*, 2019 WL 1756530, at *3 (quoting *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005)).

Moreover, "[a]lthough the burden on the plaintiff at this preliminary stage is modest, 'it is not nonexistent.'" *LaRue v. Moms In Motion, Inc.*, No. 7:17-CV-162, 2017 WL 7052264, at *1 (W.D. Va. June 7, 2017); *see also Ali v. Sugarland Petroleum*, No. 4:09-CV-0170, 2009 WL 5173508, at *2 (S.D. Tex. Dec. 22, 2009) (Although the standard at this stage is lenient, it is not automatic). In particular, a court may determine that conditional certification is inappropriate where multiple claims cannot be adjudicated efficiently because they would require "substantial individualized determinations for each class member." *Purdham v. Fairfax County Pub. Sch.*, 629

F. Supp. 2d 544, 549 (E.D. Va. 2009); *see also England v. New Century Fin. Corp.,* 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (finding conditional certification inappropriate where adjudication of a collective action would have required factual inquiries into employment relationships involving different managers at different geographic locations throughout the country, and where the court concluded that a finding of liability at one location would not necessarily lead to a finding of liability at another location).

Here, Plaintiffs fail to make a factual showing that individuals employed by three different companies, in differing job positions, located in three separate facilities are similarly situated to proceed as a collective action.

### A. Plaintiffs Fail to Establish They Were Employees of All Defendants.

As an initial matter, Plaintiffs fail to make any factual showing that they were employed by any entity other than Defendant Jennmar Virginia. At this juncture of the litigation, Plaintiffs must make some basic showing, supporting their contention that they were employed by all named Defendants. *Thomas v. Walmart, Inc*., No. CV 18-4717, 2019 WL 7041809, at *3 (E.D. Pa. Dec. 19, 2019) (the standard for conditional certification requires that the named plaintiff point to "something beyond mere speculation" to establish the requisite similarity).

Plaintiffs' Complaint and affidavits do not attest to any personal knowledge or allege any facts to suggest that Stacy and Allen were employed by Defendants Jennmar East Virginia, Jennmar Construction Tools, and Doe Defendants. To the contrary, Stacy's paystubs produced by Plaintiffs confirm that Stacy was employed only by Jennmar Virginia. *See* Ex. 1 at PLTF0001-PLTF0067. Specifically, Stacy's produced paystubs dating from October 21, 2019 through January 10, 2021 are issued on behalf of "Jennmar Corporation of Virginia INC" and do not name or identify any other entity. *See id*. These produced paystubs directly contradict Stacy's sworn

affidavit attached to Plaintiffs' Memorandum, which states, "Based on the information on my pay stubs and tax documents and other information provided throughout my employment, my understanding was that Defendants were my employers." Memorandum at Ex. A, ¶ 1. Allen's affidavit makes the exact same allegation and does not include any supporting documents. Thus, Plaintiffs' speculative and conclusory allegations fail to establish that they were employed by an entity other than Jennmar Virginia, as confirmed by Stacy's paystubs. Ex. 1 at PLTF0001-PLTF0067. Accordingly, conditional certification of a collective action comprised of current and former employees of Jennmar Virginia, Jennmar East Virginia, Jennmar Construction Tools, and the Doe Defendants' (whomever they may be) is not appropriate. Should the Court grant conditional certification, which Defendants contend it should not, notice should be limited to Jennmar Virginia's employees.

### B. Plaintiffs Fail to Allege The Existence of an Unlawful Policy Under the FLSA.

Plaintiffs' Motion should be denied because they have failed to make a showing that they and employees of Jennmar Virginia, Jennmar East Virginia, Jennmar Construction Tools, and the Doe Defendants, and that they and the purported collective "together were victims of a common policy or plan that violated the law." *Purdham,* 629 F. Supp. 2d at 548. Specifically, "the practice of rounding to the nearest 5 minutes, or to the nearest tenth or quarter hour, is expressly approved by the FLSA regulations as long as it is used in a manner that does not result, over a period of time, in failure to compensate employees for all of the time they have worked." *Adair v. Wisconsin Bell, Inc.*, 2008 WL 4224360, at *11 (E.D. Wis. Sept. 11, 2008) (citing 29 C.F.R. § 785.48(b)). Only "[a] rounding policy or practice that consistently resulted in a rounding down of hours would likely violate the FLSA[,]" and then only if "an employee actually lost overtime or minimum wages as a result of" rounding. *McElmurry v. US Bank Nat'l Assoc.*, No.CV-04-642, 2004 WL

1675925, at *11-15 (D. Or. July 27, 2004) (declining to conditionally certify a collective action where "the similarly situated determination in terms of actual wage loss requires individual employee-by-employee, timesheet-by-timesheet inquiries which are inconsistent with a collective action's goal of promoting judicial efficiency.") *Id.* at *16. Plaintiffs' own allegations establish that the rounding practice is lawful in that Plaintiffs state that their time was rounded up to 15 minutes when clocking in eight minutes or more before a shift, and rounded down if clocking in seven minutes or less before the shift. Memorandum at p. 5.

Moreover, applicable regulations provide that, "[i]n those cases where time clocks are used, employees who voluntarily come in before the regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work." 29 C.F.R. § 785.48. Similarly, an employer's rounding policy complies with the FLSA if it "applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment." *Corbin v. Time Warner Ent.-Advance/Newhouse P'ship*, 821 F.3d 1069, 1076 (9th Cir. 2016). Explaining this principle, the Ninth Circuit Court of Appeals in *Corbin v. Time Warner Ent.-Advance/Newhouse Partnership* held that an employer's rounding policy is lawful as long as it is neutral:

> Employers use rounding policies to calculate wages efficiently; sometimes, in any given pay period, employees come out ahead and sometimes they come out behind, but the policy is meant to average out *in the long-term.* If an employer's rounding practice does not permit both upward and downward rounding, then the system is not neutral and "will ... result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked."

*Id*. at 1077 (emphasis in original).

Here, Plaintiffs fail to allege the existence of a rounding policy that violates the FLSA. Instead, Plaintiffs' Motion and affidavits describe a neutral rounding policy that permits both

upward and downward rounding on a consistent basis. Specifically, Plaintiffs' Motion alleges Defendants' rounding policy rounded upward and downward, depending on the time the employee clocked in:

> For example if an employee had a scheduled start time of 2:00 P.M. for his shift, yet clocked in eight (8) minutes early, Defendants' timekeeping system would round this employee's start time down to 1:45 P.M. *See* Dkt. 1 ¶¶ 2, 24; Stacy Decl., ¶ 8; Allen Decl., ¶ 7. Conversely, if this same employee clocked in seven (7) minutes early, Defendants' timekeeping system would round this employee's start time up to 2:00 P.M.

Motion at p. 5. This rounding policy alleged by Plaintiffs is neutral, and lawful, since "in any given pay period, employees come out ahead and sometimes they come out behind, but the policy is meant to average out *in the long-term.*" *Corbin*, 821 F.3d 1069 at 1077. (emphasis in the original). Thus, to the extent Plaintiffs allege an FLSA violation based on the rounding policy, conditional certification is not appropriate in this matter.

**C. Plaintiffs Fail to Identify a Company-Wide Policy or Plan Applicable to Every Putative Collective Member.**

To meet the conditional-certification standard, Plaintiffs must demonstrate a "common policy or plan that violated the law" may have applied across the putative collective. *Purdham*, 629 F. Supp. 2d at 549; *Mebane v. GKN Driveline N. Am., Inc.*, No. 337 F.R.D. 479 (M.D.N.C. 2020). That is, "class members in a collective action 'must share more than a common allegation that they were denied overtime or paid below the minimum wage.'" *Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 119 (D.D.C. 2004) (quoting *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002)). "The class members must put forth a common legal theory upon which each member is entitled to relief.'" *Hunter*, 346 F. Supp. at 119. This burden "may be satisfied based on pleadings and affidavits." *Blount v. U.S. Sec. Assocs.*, 945 F. Supp. 2d 88, 93 (D.D.C. 2013). But "pure speculation" is not sufficient. *Ayala v. Tito Contrs.*, 12 F. Supp. 3d 167, 170 (D.D.C. 2014) (quoting *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other*

*grounds*, 569 U.S. 66 (2013)). However, courts deny conditional certification, or certify a collective narrower than the one proposed, where plaintiffs have failed "to produce any evidence that there was a common practice" covering the entire proposed collective. *Dinkel v. Medstar Health, Inc*., 880 F. Supp. 2d 49, 55 (D.D.C. 2012).

**1. Plaintiffs Fail to Identify A Company-Wide Policy, Implemented By Each Defendant.**

As demonstrated above, Plaintiffs do not and cannot allege that the rounding policy is unlawful. Instead Plaintiffs allege that their supervisor instructed them to deviate from the rounding policy to meet their burden to show a company-wide policy. Plaintiffs' allegations fail to satisfy their burden.

It is axiomatic that in moving for conditional certification on the basis of a company-wide policy, a plaintiff must provide an evidentiary basis for the existence of such a policy. *Gayle v. United States*, 85 Fed. Cl. 72, 78 (2008) (holding, the experience of three individuals at one Veterans Affairs' medical center is not sufficient to conclude that the agency had a nationwide policy of not paying overtime to per diem nurses assistants). Mere allegations will not suffice; some factual evidence is necessary. *Bernard v. Household Int'l, Inc*., 231 F. Supp. 2d 433, 435 (E.D. Va. 2002). Here, Plaintiffs fail to present any evidence that they were the victims of a single decision, policy, or plan, implemented by Jennmar Virginia, Jennmar East Virginia, Jennmar Construction Tools, and the Doe Defendants, which violated the FLSA. *See Basco v. Wal–Mart Stores, Inc.,* No. 00–3184, 2004 WL 1497709, at *8 (E.D.La. July 2, 2004) (decertifying a class because "various decisions by different supervisors made on a decentralized employee-by-employee basis" did not demonstrate a "single decision, policy or plan" satisfying the "similarly situated" requirement).

In *Bernard v. Household Int'l, Inc.*, the Eastern District of Virginia denied the plaintiffs'

request for notice based on their failure to provide sufficient evidence showing that the defendant had a company-wide policy resulting in potential FLSA violations. *Bernard*, 231 F. Supp. 2d at 436-437. The *Bernard* court reasoned that plaintiffs' declarations, which were focused on the acts of supervisors at defendants' individual offices in Chesapeake and Virginia Beach, Virginia, failed to raise specific allegations regarding practices in the defendants' offices outside of Virginia. *Id*. at 435. The court further determined that plaintiffs' evidence was inadequate to meet the required factual threshold since the plaintiffs did not provide the names of employees or supervisors in other offices, outside of Virginia or any indication that the FLSA violations alleged were gained through first-hand knowledge. *Id*. at 436. Moreover, while the court considered plaintiffs' allegation that payroll was processed from a central location, the court determined that this alone was an insufficient basis on which to assert that the collective employees were similarly situated. *Id.* at 436.

Like the plaintiffs in *Bernard*, Plaintiffs here have failed to set forth any evidence indicating that "all Plaintiffs are affected by the same pre-shift work and timekeeping policies of Defendants…" Memorandum at p. 6. Tellingly, Plaintiffs fail to provide the name of any employee, identify the existence of any document, or reference any facts demonstrating Plaintiffs' first-hand knowledge that the same policy was issued and implemented throughout Jennmar Virginia, Jennmar East Virginia, Jennmar Construction Tools, and the Doe Defendants. Indeed, the Plaintiffs in this matter have submitted significantly less evidence than the plaintiffs in *Bernard*, thus warranting denial of their Motion. Specifically, the *Bernard* Plaintiffs identified the defendants' policy of processing payroll from a central location as evidence of single policy. *Bernard*, 231 F. Supp. 2d at 436. Here, Plaintiffs have not identified any document, written policy, or statement made on behalf of Defendants indicating that a common policy was shared by all

Defendants that prohibited employees from accurately recording time worked. Instead, Plaintiffs allege in conclusory fashion their mere speculation that supervisors throughout each Defendants' operations made threats similar to Stiltner, without any supporting evidence or first-hand knowledge. This will not do.

Plaintiffs' affidavits allege only that Allen and Stacy were employed at "Defendants' Cedar Bluff facility." *Id*. at Ex. A, ¶ 12; Ex. B, ¶ 11. From here, Plaintiffs make the unfounded leap that, "[f]rom personally speaking with, observing, and working alongside other employees of Defendants, I know that most, if not all, other employees are also required to perform unpaid shift work." *Id*. at Ex. A, ¶ 13; Ex. B, ¶ 12. This speculative and unsupported allegation fails to provide the name, position, or job responsibilities of any other employee, outside of Jennmar Virginia's Cedar Bluff Facility who was subjected to the same alleged instructions from any other named supervisor. Further, Plaintiffs do not provide a declaration or any supporting facts confirming first-hand knowledge from individuals employed at the other Defendants' facilities located in Bristol and Rich Creek, Virginia (let alone the other buildings at the Cedar Bluff campus). *See Longcrier v. HL–A Co., Inc.*, 595 F. Supp. 2d 1218, 1239–40 (S.D. Ala .2008) (finding 30 affidavits concerning supervisor refusal to approve overtime hours sufficient to suggest an unwritten policy); *Hens v. ClientLogic Operating Corp.*, No. 05–0381, 2006 WL 2795620, at *4 (W.D.N.Y. Sept. 26, 2006) (finding that 62 declarations by proposed plaintiffs who worked in seven different facilities in five different states demonstrated the potential FLSA violations were not "isolated" instances, but rather a company-wide policy). Accordingly, Plaintiffs have set forth no facts establishing that a common policy was implemented and enforced by each Defendant and at each facility in which they operate.

Plaintiffs fail to provide any evidence that the alleged timekeeping instructions extend

beyond the second shift they worked. *See MacGregor v. Farmers Ins. Exch.*, No. 2:10-CV-03088, 2011 WL 2981466, at *4 (D.S.C. July 22, 2011) (if there is not a uniform practice but rather decentralized and independent action by supervisors that is contrary to the company's established policies, individual factual inquiries are likely to predominate and judicial economy will be hindered rather than promoted by certification of a collective action). Plaintiffs offer the even more attenuated claim that "Defendants' Human Resources Department" told them "they would be disciplined if we clocked in earlier than seven (7) minutes before the scheduled start time of our shifts…" *Id*. Motion at Ex. A, ¶ 8; Ex. B, ¶ 7. These bare allegations which do not even name any individual human resources member or the manner of communication fail to satisfy even the minimal burden needed to warrant conditional certification as Plaintiffs have not to set forth any affidavits, documents, or allegations of similar practices employed by other supervisors or human resources personnel at any of Defendants' facilities. Accordingly, Plaintiffs have failed to establish a common policy or practice.

Plaintiffs' affidavits fail to set forth any evidence showing that Plaintiffs are employees of Jennmar East Virginia, Jennmar Construction Tools, and the Doe Defendants. Moreover, Plaintiffs have failed to identify a common policy or practice that violates the FLSA, since the time rounding policy is neutral and lawful on its face, thus requiring a highly individualized, fact intensive inquiry to determine if individual Plaintiffs completed any uncompensated work. Further, putative collective members affidavits fail to set forth any evidence that a common policy or practice was implemented by and enforced by individual supervisors at three separate companies operating in three separate facilities. Rather, Plaintiffs' speculative allegations demonstrate only that the alleged timekeeping practices were, at most, the whim of individual supervisors, making this case

improper for collective action treatment since the allegations cannot be adjudicated without substantial individual inquiry. Accordingly, certification of the collective should be denied.

**D. Any Notice Sent to Potential Opt-In Plaintiffs Should Be Significantly Modified From Plaintiffs' Proposed Forms.**

In the event this Court determines that Plaintiffs have met their burden for conditional collective action – which Defendants contend it should not - Defendants request that Plaintiffs' proposed Notice and Consent forms be significantly modified. For the reasons set forth above, notice should be limited to only those current and former employees of Defendant Jennmar Virginia working at the Cedar Bluff Facility.

The decision to authorize an opt-in notice to potential plaintiffs under the FLSA is within the discretion of the district court. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Moreover, although a district court has discretion to authorize notice to similarly situated employees of the opportunity to opt into a collective action, giving such notice is not mandatory. *Id.* Therefore, Defendants request that any notice to potential opt-in plaintiffs be limited to delivery via U.S. mail based on a 30 day opt-in period, and that Plaintiffs' request for the social security number, email address, and home and cellular telephone numbers of potential opt-in plaintiffs be denied.

**1. Plaintiffs' Proposed Notice Includes a Case Caption Which Could Be Perceived as a Judicial Endorsement of the Action.**

In *Hoffman-LaRoche Inc,* the Supreme Court emphasized the need for court-approved notices to be "accurate and informative" so that collective action members can make "informed decisions about whether to participate." *Id.* at 170-71. Moreover, the notice must be objective, neutral, and not misleading, inaccurate, or biased. *See Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998). "In exercising the discretionary authority to oversee the notice-giving

process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman--La Roche*, 493 U.S. 165 at 174.

Including a case caption at the top of the notice, as Plaintiffs have in their proposed Notice (Motion at Ex. C), risks giving a potential opt-in plaintiff the false impression of judicial endorsement of Plaintiffs' position where none exists. *See Martinez v. Cargill Meat Solutions*, 265 F.R.D. 490, 499 (D. Neb. 2009) ("placing the court name in the heading is improper because it may be misconstrued as judicial support for the plaintiffs' litigation"); *Gerlach v. Wells Fargo & Co.*, No. C 05-0585 CW, 2006 WL 824652, at *4 (N.D. Cal. Mar. 28, 2006) (Plaintiffs' form has a court caption, which as defendants note could be perceived as a judicial endorsement of this action the caption, and should be omitted); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1047 (N.D. Ill. 2003) (including a case caption on a proposed notice form is likely to be misunderstood as a representation that the case probably has merit). Therefore, the case caption should be omitted from Plaintiffs' proposed Notice form.

**2. Notice Should Be Limited to U.S. Mail and Plaintiffs' Request For Notice to be Posted at Defendants' Facilities and Enclosed with Opt-in Plaintiffs' Pay Stubs Should Be Denied.**

Plaintiffs have not demonstrated the need to provide notice in a form other than U.S. Mail, which courts view as the best form of notice. *See Putnam v. Galaxy 1 Mktg. Inc.*, 276 F.R.D. 264, 277 (S.D. Iowa 2011). Plaintiffs have offered no logical explanation as to why potential notice should be redundantly distributed by mail, email, text message, through posting at Defendants' facilities, and by enclosing notice with opt-in plaintiffs' pay stubs. Plaintiffs have requested that Defendants be ordered to post Notice "in a conspicuous location at any place of employment where members of the conditionally certified collective work, and to enclose the Notice in members of

the conditionally certified collective's paystubs." Memorandum at p. 21. However, such postings and enclosures with opt-in plaintiffs' pay stubs would be "overly intrusive and should not be ordered absent evidence that mailing of notices is ineffective." *See, e.g.*, *Martinez*, 265 F.R.D. at 500-01 (rejecting dissemination of notice via workplace posting where "[t]here is no evidence personal mailing will be an unreliable means of delivering notice to the putative plaintiffs"). Plaintiffs have offered no such evidence.

Moreover, Plaintiffs' request that Notice and Consent forms be distributed by email and text message should be denied. Distribution by email and text message lacks the formality of U.S. Mail; distribution by U.S. Mail is less likely to be distorted or abused in its print form. *See Reab v. Elec. Arts, Inc*., 214 F.R.D. 623, 630 (D. Colo. 2002) (holding that providing notice by mail "ensures the integrity of a judicially controlled communication directed to the intended audience."). As Plaintiffs' own authorities cited throughout their Memorandum confirm, justification is required to deviate from distribution by U.S. Mail. Memorandum at p. 19. *Vasto v. Credico* (USA) LLC, No. 15 CIV. 9298 (PAE), 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (distribution of proposed notice via email and text message was permissible because the nature of the employer's business facilitated a high turnover rate among employees); *Gagliastre v. Capt. George's Seafood Rest., LP*, No. 2:17CV379, 2018 WL 9848232, at *5 (E.D. Va. Mar. 13, 2018) (disclosure of telephone numbers along with names and addresses was permissible to expedite the notice process).

Further, providing addresses of potential collective members is less invasive and intrusive upon potential plaintiffs because U.S. Mail is run by a uniform system, whereas email and text message can be used at all hours, in any number of ways. Thus, notice by mail will adequately provide notice to all relevant individuals without creating prejudice against Defendants or intrusion

upon putative collective members. *See Teramura v. Walgreen Co.*, No. 12-5244, 2013 WL 991440, at *4 (W.D. Ark. Mar. 8, 2013) (as the plaintiffs provided no reason that notice by mail was insufficient, the court "den[ied] plaintiffs' request to communicate with potential plaintiffs by telephone, email, or website").

**3. Plaintiffs Have Not Demonstrated the Need For the Last Four Digits of Potential Plaintiffs' Social Security Numbers.**

Plaintiffs have not shown that the last four digits of potential opt-in plaintiffs' Social Security numbers are necessary to contact potential plaintiffs. Moreover, Plaintiffs have offered no explanation as to why an incursion on the privacy of Defendants' current and former employees is warranted. *See Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007) (denying request for production of Social Security numbers of potential opt-in plaintiffs where "Plaintiff has provided no rationale to explain why he requires such extensive production of information"); *Pal v. Sandal Wood Bar N Grill Inc.*, 2015 WL 237226, at *2 (S.D.N.Y. Jan. 15, 2015) (declining "to order disclosure of social security numbers where other means of identification are available, given the sensitivity of such information," particularly "absent a showing that other forms of identification will be insufficient"); *Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 785, (C.D. Ill. 2015) ("the last four digits of social security numbers would be of marginal use in locating potential plaintiffs and, whatever that marginal use might be, it is substantially outweighed by the privacy concerns of potential plaintiffs"). Therefore, Plaintiffs' request for the last four digits of opt-in plaintiffs' Social Security numbers should be denied.

**4. Plaintiffs Request For a "Reminder Mailing" Sent 45 Days After the Initial Mailing Should Be Denied.**

Plaintiffs improperly seek to advertise this litigation by sending a reminder mailing 45 days after the initial mailing to all non-responding members. Memorandum at p. 21. Such requests have

been denied by many courts that recognize the thin line between properly advising potential opt-ins of the existence of the litigation and improper judicial encouragement to participate. These courts permit only "one-time mailing" of the judicially-approved notice and deny requests for reminder notices, which "can 'be interpreted as encouragement by the court to join the lawsuit.'" *See Robinson v. Ryla Teleservices, Inc.*, No. 11-131, 2011 WL 6667338, at *5 n. 7 (S.D. Ala. Dec. 11, 2011); *Sharpe v. APAC Customer Servs.*, No. 09-cv-329, 2010 WL 1292154, at *2 (W.D. Wis. Mar. 29, 2010); *Hipp v. Liberty Nat'l Life Ins. Co.*, 164 F.R.D. 574, 576 (M.D. Fla. 1996) (authorizing one written notice and "strictly prohibit[ing]" any other communication between plaintiffs' counsel and putative class members). Likewise, responding to a similar request, the court in *Witteman v. Wisconsin Bell, Inc*. explained "that the reminder is unnecessary and potentially could be interpreted as encouragement by the court to join the lawsuit. The purpose of notice is simply to inform potential collective members of their rights. Once they receive that information, it is their responsibility to act as they see fit." No. 09-cv-440, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010); *see also Knispel v. Chrysler Group, LLC*, No. 11-11886, 2012 WL 553722, at *8 (E.D. Mich. Feb. 21, 2012); *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 753-54 (N.D. Ill. 2010); *Barnwell v. Corr. Corp. of America*, No. 08-2151, 2008 WL 5157476, at *6 (D. Kan. Dec. 9, 2008).

Moreover, in addition to the risk of judicial imprimatur, courts in the Fourth Circuit and elsewhere have rejected requests for reminder notices because of their "potential to unnecessarily 'stir up litigation.'" *Calderon v. GEICO Gen. Ins*. Co., No. 10cv1958, 2011 WL 98197, at *8 (D. Md. Jan. 12, 2011) (quoting *Montoya v. S.C.C.P. Painting Contractors, Inc.*, No. 07-455, 2008 WL 554114, at *4 (D. Md. Feb. 26, 2008) (in authorizing notice, a court "must take pains ... to 'avoid the "stirring up" of litigation through unwarranted solicitation' ")). *Cf. Hoffmann-La Roche*

*v. Sperling*, 493 U.S. 165, 181 (1989) (Scalia, J., dissenting) ("'Stirring up litigation' was once exclusively the occupation of disreputable lawyers, roundly condemned by this and all American courts."); *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-67 (D. Minn. 1991) (in "sending . . . notice and consent forms to potential plaintiffs . . . [t]he courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation"). Accordingly, Plaintiffs' request for a reminder notice 45 days after the initial mailing should be denied.

**5. Plaintiffs' Proposed Notice Must Inform Opt-In Plaintiffs' Of Their Choice of Counsel as Well as any Attorney's Fees.**

Courts routinely require that notices in FLSA cases advise opt-in plaintiffs of their right to choose their own counsel. *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012) (modifying notice to include explanation of opt-in's right to their own attorney); *Whitehorn*, 767 F. Supp.2d at 450-51 (requiring amendment of proposed notice "to state that participating plaintiffs may retain their own counsel"). Further, courts in this Circuit and elsewhere have held that plaintiffs' counsel must provide their contingency fee percentage in the opt-in notice to better inform potential opt-ins in their choice of counsel. *See Lineras v. Inspiration Plumbing LLC*, No. 1:10CV324 JCC, 2010 WL 4623940, at *3 (E.D. Va. Nov. 3, 2010) (E.D. Va. Nov. 3, 2010) (requiring inclusion of contingency fee percentage in notice); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007). Here, Plaintiffs' proposed Notice fails to inform potential opt-in plaintiff they have the right to choose their own counsel and should be modified accordingly.

**6. Plaintiffs' Proposed Notice is Overly Inclusive.**

If the Court is inclined to grant conditional certification, the Notice should have a two year window, not three years as requested by Plaintiffs. Memorandum at p. 20. The statute of limitations

under the FLSA is two years, unless the employer's violation was "willful," in which case it is three years. 29 U.S. C. § 255(a). A violation of the FLSA is willful where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1998). The burden of showing that the employer's alleged FLSA violation was willful is on the plaintiff seeking to invoke the extended statute of limitations. *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 358 (4th Cir. 2011); *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 308 (7th Cir. 1986).

Here, Plaintiffs' Complaint does not set forth any facts demonstrating that the Defendants engaged in any willful conduct. Further, Plaintiffs' Motion and supporting affidavits do not offer any additional facts or cite to any authority supporting an extension of the statute of limitations in this matter. Therefore, Plaintiffs' proposed Notice should be limited to the standard FLSA limitations period of two years, measured from the date of the Court's Order.

## IV. CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' Motion to Conditionally Certify This Matter as a Collective Action and For a Court-Authorized Notice to Be Issued Under Section 216(B) of the Fair Labor Standards Act. In the alternative, should the Court grant Plaintiffs' Motion, the Court should limit the collective of potential plaintiffs to those similarly situated current and former employees at Jennmar Virginia's Cedar Bluff Facility and modify Plaintiffs' proposed Notice and Consent forms consistent with the requests herein.

Respectfully submitted this 25th day of August, 2021.

/s/ *K. Maxwell Bernas*
K. Maxwell Bernas
VA Bar No. 90553
Kmbernas@fordharrison.com
FordHarrison LLP
1300 19th Street, NW, Suite 420
Washington, DC 20036
Telephone: 202-719-2047
Facsimile: 202-719-2077

Benjamin P. Fryer (*pro hac vice*)
NC Bar No. 39254
bfryer@fordharrison.com
FordHarison LLP
6000 Fairview Road, Suite 1415
Charlotte, NC 28210
Telephone: 980-282-1900
Facsimile: 980-556-7183

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 25th day of August, 2021, I caused a true and accurate copy of the foregoing Defendants' Response in Opposition to Named Plaintiffs' Motion to Conditionally Certify This Matter as a Collection Action and For Court-Authorized Notice to Be Issued Under Section 216(B) of the Fair Labor Standards Act to be served via electronic mail to the following counsel:

Gregg Greenberg
Zipin, Amster & Greenberg, LLC
8757 Georgia Ave, Suite 400
Silver Spring, MD 20910
ggreenberg@zagfirm.com

Robert Tucci
Francisco Mundaca
The Spiggle Law Firm, PLLC
430A 31st Street, S., Suite A
Arlington, VA 22206
rtucci@spigglelaw.com
fmundaca@spigglelaw.com

*Attorneys for Plaintiffs*

/s/ *K. Maxwell Bernas*
K Maxwell Bernas
VA Bar No. 90553
kmbernas@fordharrison.com
FORDHARRISON LLP
1300 19th Street, NW, Suite 420
Washington, DC 20036
Telephone: 202-719-2047
Facsimile: 202-719-2077

*Attorney for Defendants*