## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **CHARLIE STACY and CLIFFORD ALLEN, individually and on behalf of all others similarly situated,** | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:21CV00015 |
| v. | ) ) ) ) ) | **OPINION AND ORDER RE STATE LAW CLASS CERTIFICATION** |
| **JENNMAR CORPORATION OF VIRGINIA, INC., ET AL.,** | ) ) ) | JUDGE JAMES P. JONES |
| Defendants. | ) | |

*Gregg C. Greenberg, ZIPIN, AMSTER & GREENBERG, LLC, Silver Spring, Maryland, and Francisco Mundaca and Robert W.T. Tucci, THE SPIGGLE LAW FIRM, PLLC, Alexandria, Virginia, for Plaintiffs; K. Maxwell Bernas, FORDHARRISON LLP, Washington, D.C., and Benjamin P. Fryer, FORDHARRISON LLP, Charlotte, North Carolina, for Defendants.*

Plaintiffs Charlie Stacy and Clifford Allen filed this class action on behalf of themselves and all individuals similarly situated, alleging that defendants violated Virginia law by not paying overtime or minimum wage to its workers and failing to provide accurate itemized wage statements.[1]  The plaintiffs have moved for class

---

[1] Citing the Virginia Minimum Wage Act (VMWA), Va. Code Ann. §§ 40.1-28.8–12 (2021), the Virginia Wage Payment Act (VWPA), Va. Code Ann. § 40.1-29 (2021), breach of contract, and quantum meruit.  The plaintiffs also allege violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq.  The present motion concerns only the state law claims.  Neither party has contested this court's subject-matter jurisdiction; however, I may address subject-matter jurisdiction sua sponte. *Suarez Corp.*

certification of their state law claims pursuant to Rule 23 of the Federal Rule of Civil Procedure.  The defendants oppose certification.  For the reasons that follow, I will grant the Motion for Class Certification and instruct that notice be sent to putative opt-out plaintiffs.

## I.

I previously recounted the facts of this case in a decision granting plaintiffs' motion for conditional certification of a collective action pursuant to § 216(b) of the FLSA.  *Stacy v. Jennmar Corp. of Va., Inc.*, No. 1-21CV00015, 2021 WL 4787278 (W.D. Va. Oct. 14, 2021).  I will briefly recount those facts relevant to the present motion.

The defendants, Jennmar Construction of Virginia, Inc., Jennmar Corporation of East Virginia, Inc., Jennmar Construction Tools, LLC, and Does 1 through 20, manufacture and assemble products for use in agricultural, construction, energy, and

---

*Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997).  This court has original jurisdiction over the plaintiffs' FLSA claims under 28 U.S.C. § 1331.  The court may exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) if the state law claims form part of the same case or controversy — that is, they derive from the same nucleus of operative facts.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  Here, plaintiffs' state law claims share a common nucleus of operative facts with the claims raised under the FLSA.  The alleged violations of Virginia law and FLSA are all based on the same conduct with regard to the same employees over the same period of time.  While  supplemental jurisdiction is discretionary, 28 U.S.C. § 1367(c), I find that it would be appropriate in this case because the state law claims do not "raise[] a novel or complex issue of State law" or "substantially predominate[]" over the other claims.  28 U.S.C. § 1367(c)(1), (2); *Calderon v. GEICO Gen. Ins. Co.*, 279 F.R.D. 337, 344–45 (D. Md. 2012).

mining industries, specifically roof and structural support components, throughout western Virginia and the United States. Plaintiffs Charlie Stacy and Clifford Allen are former production and crane workers for the defendants at the Cedar Bluff, Virginia, facility. In general, they were responsible for monitoring and operating workstations along the production lines. On April 12, 2021, the plaintiffs filed their Complaint on behalf of themselves and those similarly situated, alleging that hourly, non-exempt workers at the defendants' facilities located at Cedar Bluff, Bristol, and Rich Creek, Virginia, routinely worked more than 40 hours per week and that defendants failed to pay them all wages and overtime wages in violation of Virginia law.

Specifically, the plaintiffs allege that they were uncompensated for pre-shift activities. The plaintiffs contend that in order to meet defendants' expectations, they were required to start performing essential job duties before their scheduled shift start time, including "completing paperwork, including 'safety sheets' and checklists; putting on personal protective equipment 'PPE', including safety glasses, gloves, and cut-resistant Kevlar sleeves; checking the machines, preparing tools, setting up the machines, and ensuring my work area was clean." Pls.' Mem. Supp. Mot. Conditionally Certify Class Ex. A, Stacy Decl. ¶ 6–7, ECF No. 28-1; *Id.* at Ex. B, Allen Decl. ¶ 5–6, ECF No. 28-2. However, hourly employees were instructed by defendants "to clock in within 7 minutes of the start time of their shift." Pls.'

Mem. Supp. Mot. Certify Class Ex. A, O'Leath Dep. 179, ECF No. 36-1; Allen Decl. ¶ 7, ECF No. 28-2.  At the Cedar Bluff and Bristol facilities, defendants also posted signs near the time clock that instructed employees "not [to] clock in earlier than 7 minutes before the scheduled shift or clock out [] later than 7 minutes past the shift end. UNLESS APPROVED BY MANAGEMENT FOR OVERTIME."  Pls.' Mem. Supp. Mot. Certify Class Ex. F, Facility Time Clock Signs 2, 3–4, ECF No. 36-6.

The plaintiffs contend that employees were subject to the same working hours and compensation policies, and the same written employment policies, created by defendants' parent company, Frank Calandra, Inc.  Specifically, as a condition of employment, each employee must comply with the Employee Handbook, which outlines the defendants' job performance expectations, timekeeping procedures, and compensation practices.  The purpose of the Handbook is "to make sure that all workers understood and followed the same guidelines, policies and practices related to their jobs."  O'Leath Dep. 234–35, ECF No. 36-1.  Individual supervisors do not have any discretion in how the policies are developed and enforced.  *Id.* at 115–16.

At each facility, hourly employees were typically scheduled for one of two shifts.  The schedule follows five eight-hour workdays for no more than 40 hours per week, with any overtime or weekend shifts scheduled based on production needs.  All hourly employees are required to clock-in and clock-out using a biometric time clock system.  The time clock is located at the point of entry for the plant floor at

each facility.  Any overtime must be approved by a supervisor, or the employee will be subject to discipline.

Additionally, all hourly employees "are required to maintain their work areas before, during, and at the end of each work shift."  *Id.* at Ex. C, Hourly Employee Safety Orientation Slides 4, 6, ECF No. 36-3.  They are required to "wear Company approved and provided personal protective equipment" (PPE) before entering the plant floor and must complete "Safety Check Lists" before they may operate their assigned machinery.  *Id.* at 8, 9.  All employees are provided a locker where they may store their PPE and other personal items.  Employees "regularly store[] their PPE in their locker, and that's where they obtain it when they come into the building, put it on, punch in, [and] go to work."  O'Leath Dep. 241, ECF No. 36-1.  In other words, "[t]pically, an hourly employee would be equipped with PPE when they are punching in."  *Id.* at 290.  Employees are instructed that they must report to their assigned workstation and be "ready to work" at the start of their scheduled shift time.  *Id.* at Ex. B, Employee Handbook 11, ECF No. 36-2.  Failure to do so results in disciplinary action.

Defendants use a common practice of rounding time to the nearest 15-minute increment to calculate wages, with employees' time rounded up to 15 minutes when clocking-in eight minutes or more before a shift but rounded down to zero minutes if clocking-in seven minutes or less before a shift.  When workers clocked in seven

minutes or less before their scheduled start time, they were not compensated for pre-shift work.

On December 3, 2021, the plaintiffs filed this motion to certify a class action of all individuals similarly situated pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure and requested court-authorized notice be issued to all putative opt-out plaintiffs. They claim that defendants' rounding policy, in combination with its mandatory safety and housekeeping pre-shift work, results in employees performing approximately 20 minutes of unpaid compensable work per shift, in violation of Virginia law. The defendants argue that the plaintiffs' motion should be denied in its entirety, contending that plaintiffs failed to satisfy Rule 23(a)'s commonality requirement and Rule 23(b)'s predominance requirement. Alternatively, if the court grants certification, the defendants maintain that the class should be limited to non-exempt second shift employees at Jennmar Virginia's Cedar Bluff facility. The parties have fully briefed the motion, and it is ripe for a decision.

II.

The Federal Rules of Civil Procedure require that a party seeking class certification satisfy four prerequisites: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). In addition, "the class action must fall within one of the three categories enumerated in Rule 23(b)." *EQT Prod. Co.*, 764 F.3d at 357

(citation omitted).  Here, the plaintiffs seek certification under Rule 23(b)(3), which requires that common issues predominate over individual ones and that proceeding as a class is superior to other available methods of litigation.  Fed. R. Civ. P. 23(b)(3).   Lastly, Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable by reference to objective criteria.  *EQT Prod. Co.*, 764 F.3d at 358.

The plaintiffs seek to certify the following class:

> All current and former non-exempt employees employed by defendants, in the Commonwealth of Virginia, within three (3) years prior to the filing of this action to the present.

Pls.' Mem. Supp. Mot. Certify Class 1, ECF No. 36.   Additionally, the plaintiffs have proposed three subclasses.

Subclass One, the "VMWA/VWPA Subclass," would consist of:

> All individuals who work or have worked for Defendants' [sic] as non-exempt hourly employees performing compensable duties for Defendants' benefit, in Virginia, at anytime within the three (3) year period prior to filing this lawsuit who were: (i) paid on an hourly basis and; (ii) were not paid all wages due and owing for work duties performed in the Commonwealth of Virginia as a result of Defendants' class-wide payroll practice of shaving shift minutes and/or hours worked; (iii) who were subject to Defendants' payroll policies and practices denying payment of wages for all hours worked and/or payment of overtime wages at the time-and-one-half rate for overtime worked over forty (40) hours per week; and/or (vi) who were not paid all wages due and owing upon separation of employment.

*Id.* at 1–2,

Subclass Two, the "Breach of Contract Subclass," would consist of:

All individuals who work or have worked for Defendants as non-exempt hourly employees performing compensable work duties for Defendants' benefit, in Virginia, at any time within the five (5) year period prior to the filing of this lawsuit who were: (i) paid on an hourly basis and; (ii) were not paid all wages contractually due and owing for work duties performed as a result of Defendants' class-wide payroll practice of shaving shift minutes and/or hours worked; (iii) were subject to Defendants' payroll policies and practices denying payment of wages for all hours worked each week; and/or (vi) who were not paid all wages due and owing upon separation of employment.

*Id.* at 2.

Subclass Three, the "Quantum Meruit Subclass," would consist of:

All individuals who work or have worked for Defendants as non-exempt hourly employees performing compensable work duties for Defendants' benefit, in Virginia, at any time within the five (5) year period prior to the filing of this lawsuit who were: (i) paid on an hourly basis and; (ii) were not paid all wages reasonably due and owing for compensable work duties performed for the benefit of Defendants as a result of Defendants' class-wide payroll practice of shaving shift minutes and/or hours worked; (iii) who were subject to Defendants' payroll policies and practices denying payment of wages for all hours worked for Defendants' benefit each week; and/or (vi) who were not paid all wages due and owing upon separation of employment.

*Id.*

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule — that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* At the certification stage, the court may be required to "probe behind the pleadings" and "take a close look at the facts relevant to the

certification question." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (internal quotation marks and citation omitted). The "likelihood of the plaintiffs' success on the merits, however, is not relevant to the issue of whether certification is proper." *Id.*

### A. Rule 23(a) Requirements.

With respect to the class, the defendants object only as to whether the plaintiffs have satisfied the commonality and predominance requirements. In ruling on the motion, I find it appropriate to consider all of Rule 23's requirements.

### 1. Numerosity.

To satisfy numerosity, the plaintiff must show that the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). There is "[n]o specified number [that] is needed to maintain a class action. Rather, an application of the rule is to be considered in light of the particular circumstances of the case." *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (internal quotation marks and citation omitted). A class of 74 members has been upheld as sufficiently numerous. Indeed, a class of only 18 members has been approved. *Id.* Here, the putative class would likely include at least 300 persons. O'Leath Dep. 79–81, ECF No. 36-1; Pls.' Mem. Supp. Mot. Class Certification Ex. L, Redacted FLSA Collective Class List, ECF No. 36-12. I therefore find that numerosity is satisfied.

Furthermore, I find that class members are easily identifiable from the defendants' employment records.

## 2. Commonality and Typicality.

The "threshold requirements of commonality and typicality are not high." *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009). Commonality requires that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Although "even a single common question" suffices, not just any common question will do. *Wal-Mart Stores Inc.*, 564 U.S. at 359 (internal quotation marks, citation, and alterations omitted). The common question must be of such a nature that its determination "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Put differently, although the rule speaks in terms of common questions, "[w]hat matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation marks and citation omitted). The existence of a uniform corporate policy is often sufficient. *EQT Prod. Co.,* 764 F.3d at 366.

Typicality concerns whether the class representatives are members of the class and "possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotation marks and citations omitted). The analysis is grounded in principles of due process and serves a guidepost for whether "the named plaintiff's claim and the class claims are

so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 157 n. 13.

First, as to typicality, the defendants do not dispute that the named plaintiffs satisfy this requirement. I agree. The named plaintiffs are members of the class and of each of the subclasses. They worked the same or similar hours, performed the same or similar duties, and operated the same or similar equipment as all putative subclass members. They allege that while employed by the defendants, they were subject to the same allegedly unlawful rounding practice and as a result, were not compensated for all hours worked in violation of Virginia law. They therefore have suffered the same injury as all putative class members. Accordingly, I find that they will fairly and adequately protect the interests of all putative class members.

Second, as to commonality, the plaintiffs contend that there are multiple issues common to the class. These include whether the defendants' system of time rounding violates state law, whether defendants failed to pay all hourly workers for all hours worked, whether defendants required employees to work more than 8 hours-a-day or 40 hours-per-week without paying minimum, regular, and overtime rates, whether defendants failed to pay all wages to hourly employees upon separation of employment, and whether defendants conduct was willful or reckless.

In response, the defendants argue that the plaintiffs fail to satisfy commonality because they have not identified a uniform and *unlawful* policy employed against all

putative class members, who work or worked for three separate companies at five different facilities with different supervisors.  Rather, the defendants claim that the plaintiffs have identified only a neutral timekeeping practice, which is lawful under Virginia law, and that their evidence is limited to the conduct of a second-shift supervisor at the Cedar Bluff, Virginia, facility, who may have required employees to review paperwork prior to clocking-in for their shifts.  Their arguments are similar to those made with respect to the conditional certification of the collective FLSA action, namely there are too many factual differences between class members, and that at best, plaintiffs' allegations are limited to one shift at one facility.

I disagree.  I find that the plaintiffs have put forth sufficient evidence that there is a common uniform policy applicable to all putative class members that may be unlawful: the defendants' time rounding practice.  More specifically, the common contention alleged by the plaintiffs is that even though defendants maintain records of actual hours worked, the rounding policy systemically decreased the timing recognized as accrued, resulting in a company-wide practice of underpaying hourly employees.  While the court does not reach the merits of the claim in a motion for class certification, a neutral time rounding practice is not per se lawful.  Rather, it is lawful only if "'it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.'"  *Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 614 (W.D. Va. 2019) (quoting 29 C.F.R.

§ 785.48(b)).  In other words, a rounding practice would be unlawful if employees were required to clock-in or clock-out within a certain time period that consistently results in rounding down of actual hours worked.

This is precisely what the plaintiffs allege in this case.  It is undisputed that defendants applied the rounding practice to all of their hourly employees.  However, it is an open question — one that is apt to generate a common answer — whether defendants' rounding practice violates Virginia law because over time, hourly employees are not being compensated for all hours actually worked.  The answer to this question would resolve the claims "in one stroke."  *Wal-Mart Stores, Inc.*, 564 U.S. at 350.  Critically, the defendants' evidence is that individual managers did not have discretion to implement timekeeping in a different way.  The cases cited by defendants in support of their opposition to commonality are also distinguishable, as they do not involve a corporate rounding practice.

Furthermore, while there may be factual differences between class members regarding how much time was spent completing pre-shift activities, such as donning PPE, reviewing paperwork, or complying with safety requirements, that alone does not defeat commonality.[2]  All putative class members' claims arise from the same

---

[2]  While not thoroughly discussed by the parties, the alleged differences in the time worked ultimately pertain to individual damages, which "'may be characterized as virtually a mechanical task, capable of mathematical or formula calculation.'"  *Messer v. Bristol Compressors Int'l, LLC*, No. 1-18CV00040, 2019 WL 2550328, at *4 (W.D. Va. June 20, 2019) (citation omitted).

conduct (defendants' rounding practice) and are based on the same legal theory (violation of Virginia's wage and hour statutes and common law). This is sufficient to satisfy commonality.

In addition, the plaintiffs rely on defendants' Employee Handbook as further evidence of a common policy or scheme. The Employee Handbook's policies apply to all employees, and they were developed and enforced by the defendants' parent company, Frank Calandra, Inc. The defendants testified that individual managers or shift supervisors lacked the discretion to amend or alter the policies, including safety requirements. The Handbook also makes clear that employees must perform certain duties as a condition of their employment, and that they must report to their duty station "ready to work" at the start of their shift. Employee Handbook at 11, ECF No. 36-2. Plaintiffs allege that "ready to work" impliedly required hourly employees to complete certain pre-shift activities that resulted in approximately 20 minutes of unpaid work per shift. The defendants, however, directed employees not to clock-in earlier than seven minutes before their shifts, ensuring that such time would not be compensated. Thus, the defendants' uniform policy is the "glue" holding all class members' claims together. *Wal-Mart Stores Inc.*, 564 U.S. at 352.

### 3. Adequacy of Representation.

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The

inquiry is two-fold.  First, proposed class representatives must be members of the class they purport to represent and their interests must not be in conflict with those of the other class members.  *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338–39 (4th Cir. 1998).  Second, class counsel must be "qualified, experienced and generally able to conduct the proposed litigation."  *Messer,* 2019 WL 2550328, at *4 (citation omitted).  Here, the named plaintiffs do not appear to have any interest antagonistic to the rest of the putative class.  Moreover, plaintiffs' counsel has extensive experience litigating complex wage and hour class and collections actions, and there are no apparent conflicts of interest for counsel.

### B. Rule 23(b) Requirements.

Having concluded that Rule 23(a) prerequisites are met, I now turn to whether the plaintiffs have satisfied the predominance and superiority requirements of Rule 23(b).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

### 1. Predominance.

A plaintiff must show that common questions of law or fact predominate over individual questions.  "The predominance requirement is similar to but more stringent than the commonality requirement of Rule 23(a)."  *Thorn*, 445 F.3d at 319.  It "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.

Here, the most prevalent issue for each subclass is whether defendants' time rounding practice, in connection with its directives regarding pre-shift activities, violates Virginia law.  The defendants' time rounding practice affected all putative class members.  While some factual differences may exist, for example, not all employees operate the same equipment, or some employees may have donned some of their PPE prior to arriving onsite, I nevertheless find that class issues will predominate over individual issues — that is, whether the defendants' compensation system cannot account for the time required to perform mandatory pre-shift work. *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 478 (E.D.N.C. 2010).

Moreover, I do not find the defendants' argument persuasive that there are critical differences between the three companies.  The defendants assert that the companies manufacture different products at separate facilities with separate management.  Even accepting this as true, the evidence shows that the same policies and procedures regarding timekeeping and safety requirements apply to every facility, without room for discretion at the local facility level.  While one facility specializes in manufacturing bolts and another in drill bits, these slight differences do not predominate, and they certainly do not impact or change defendants' compensation policies.

The defendants argue that instructions about complying with defendants' rounding practice are provided by human resources (HR) personnel at each facility,

and that no one is instructed to complete work without clocking-in.  The fact that different personnel onboard new employees regarding defendants' timekeeping systems, however, does not bear on whether the same rounding practice applies.  In fact, the defendants testified that HR personnel have no discretion to amend the defendants' timekeeping and compensation policies.   The defendants further testified that all employees were directed to clock-in within seven minutes of their shift start-time.  The mere fact that only some facilities had signs posted to that effect does not mean that the rounding policy was not company-wide or that it was not uniformly enforced.

Finally, that plaintiffs have not identified some explicit written or verbal directive implicating defendants in an unlawful compensation scheme does not absolve them of liability, nor is it appropriate to resolve in a motion for class certification.  Stacy testified that "[n]o body specifically required [him] to be" at the worksite before this shift, but "it was just the understanding of being there so we could prepare for our shifts," including to get "our paperwork, know what we're doing, got our lockers, get our hard hats, glasses."  Defs.' Mem. Opp'n Ex. 2, Stacy Dep. 79, ECF No. 39-2.  Allen similarly testified that no one told him he needed to arrive early for his shift, but that he "needed that time, because it was a hard job."  Pls' Rep. Ex. 2, Allen Dep. 24, ECF No. 43-2.  But these are not the damning confessions hinted at by defendants.  The plaintiffs' theory is that defendants'

expectations made it impossible for hourly employees to perform their job duties without pre-shift work, and that due to the rounding practice, they were not compensated for that work.  That some of the work was completed during the seven minutes of pre-shift on-the-clock work does not change the analysis, as that time was still not paid under the rounding policy.[3]  Of course, whether defendants' policy is unlawful is a merits question that is not the issue to decide in a certification motion. The court may probe behind the pleadings only to ensure that there are sufficient facts to support the claims.  *Thorn*, 445 F.3d at 319.  Plaintiffs have met that burden.

## 2.  Superiority.

The superiority requirement ensures that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The court should consider:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

---

[3] Defendants argue that "all such time was paid."  Defs.' Mem. Opp'n 14, ECF 39. They therefore argue that the plaintiffs' deposition testimony contradicts their sworn affidavits.  *Id.*  The court does not resolve factual disputes or weigh the credibility of witnesses and evidence in a motion for certification, including whether the "sham affidavit" rule applies.  *Victorino v. FCA US LLC*, No. 16cv1617-GPC(JLB), 2018 WL 2455432, at *21 (S.D. Cal. June 1, 2018).  Nevertheless, the plaintiffs' statements do not appear to be in conflict.  They claim in their testimony and affidavits that they were not compensated for pre-shift activities, which would include the seven minutes of pre-shift on-the-clock work.

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.*

I find that a class action is superior to other methods of adjudicating this controversy. As to the first factor, the potential small amount of individual damages compared to the financial burden for individual plaintiffs to litigate their claim demonstrate the efficiencies and benefits of class wide resolution. With respect to the second factor, none of the parties have identified separate ongoing litigation concerning the issues raised in this case. As to the third factor, the defendants' facilities are located in this judicial district, and there is no reason that this court would not be the best forum to resolve the dispute. Finally, I do not find that the number of putative class members poses significant manageability concerns.

The court will grant the plaintiffs' Motion to Certify Class and appoint the named plaintiffs as class representatives. The court will also grant the plaintiffs' motion to appoint Zipin, Amster & Greenberg, LLC, and The Spiggle Law Firm, PLLC, as class counsel. Under Rule 23(g), the court must consider

> (i) the work counsel has done in identifying and investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  Given counsel's extensive experience and expertise litigating complex wage-and-hour class actions, I find they are more than capable of representing this class.  Plaintiffs' counsel has also handled this case from the outset and will undoubtedly commit sufficient resources to fully litigate the claims.

Finally, plaintiffs' proposed notice is sufficient.  As I previously held in granting plaintiffs' motion for conditional certification of related FLSA claims, mailing of notices through the U.S. Postal Service is the best and most appropriate form of notice.  *Stacy*, 2021 WL 4787278, at *11.  The defendants must therefore produce a list with the name, job title, last known mailing address, dates of employment, shift assignment, and location of employment for putative plaintiffs within 15 days of this Opinion and Order.

### III.

For the reasons stated, it is hereby **ORDERED** as follows:

1. The Motion for Class Certification and Court-Authorized Notice, ECF No. 35, is GRANTED, pursuant to Federal Rule 23(a) and 23(b)(3);

2. The certified class is defined as follows:

   All current and former non-exempt employees employed by defendants, in the Commonwealth of Virginia, within three (3) years prior to the filing of this action to the present.

3. The certified subclasses are defined as follows:

   VMWA/VWPA Subclass One: All individuals who work or have worked for Defendants as non-exempt hourly employees performing compensable

duties for Defendants' benefit, in Virginia, at anytime within the three (3) year period prior to filing this lawsuit who were: (i) paid on an hourly basis and; (ii) were not paid all wages due and owing for work duties performed in the Commonwealth of Virginia as a result of Defendants' class-wide payroll practice of shaving shift minutes and/or hours worked; (iii) who were subject to Defendants' payroll policies and practices denying payment of wages for all hours worked and/or payment of overtime wages at the time-and-one-half rate for overtime worked over forty (40) hours per week; and/or (vi) who were not paid all wages due and owing upon separation of employment.

Breach of Contract Subclass Two: All individuals who work or have worked for Defendants as non-exempt hourly employees performing compensable work duties for Defendants' benefit, in Virginia, at any time within the five (5) year period prior to the filing of this lawsuit who were: (i) paid on an hourly basis and; (ii) were not paid all wages contractually due and owing for work duties performed as a result of Defendants' class-wide payroll practice of shaving shift minutes and/or hours worked; (iii) were subject to Defendants' payroll policies and practices denying payment of wages for all hours worked each week; and/or (vi) who were not paid all wages due and owing upon separation of employment.

Quantum Meruit Subclass Three: All individuals who work or have worked for Defendants as non-exempt hourly employees performing compensable work duties for Defendants' benefit, in Virginia, at any time within the five (5) year period prior to the filing of this lawsuit who were: (i) paid on an hourly basis and; (ii) were not paid all wages reasonably due and owing for compensable work duties performed for the benefit of Defendants as a result of Defendants' class-wide payroll practice of shaving shift minutes and/or hours worked; (iii) who were subject to Defendants' payroll policies and practices denying payment of wages for all hours worked for Defendants' benefit each week; and/or (vi) who were not paid all wages due and owing upon separation of employment.

4. Zipin, Amster & Greenberg, LLC, and The Spiggle Law Firm, PLLC, are

   appointed as class counsel;

5. The defendants shall provide to class counsel an updated mailing list, in alphabetical order by employee last name, with the job title, last known mailing address, dates of employment, shift assignments, and location of employment of all potential members of this class action;

6. The list shall be provided electronically in a manner requested by class counsel within 15 days of the entry of this Opinion and Order in order to facilitate mailing; and

7. A copy of the notice and the opt-in form, Pls.' Mem. Supp. Mot. Certify Class, Ex. J, ECF No. 36-10, shall be provided via U.S. Postal Service to all members of the certified subclasses.

ENTER:  May 6, 2022

/s/  JAMES P. JONES
Senior United States District Judge