# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **CHARLIE STACY and CLIFFORD ALLEN, individually and on behalf of all others similarly situated,** | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:21CV00015 |
| v. | ) ) | **OPINION AND ORDER** |
| **JENNMAR CORPORATION OF VIRGINIA, INC., ET AL.,** | ) ) ) | JUDGE JAMES P. JONES |
| Defendants. | ) ) | |

*Gregg C. Greenberg, ZIPIN, AMSTER & GREENBERG, LLC, Silver Spring, Maryland, and Francisco Mundaca and Robert W.T. Tucci, THE SPIGGLE LAW FIRM, PLLC, Alexandria, Virginia, for Plaintiffs; K. Maxwell Bernas, FORDHARRISON LLP, Atlanta, Georgia, and Benjamin P. Fryer, FORDHARRISON LLP, Charlotte, North Carolina, for Defendants.*

The plaintiffs filed this collective and class action on behalf of themselves and all individuals similarly situated, alleging that the defendants violated the Fair Labor Standards Act (FLSA) and Virginia wage and hour laws by not paying overtime or minimum wage to its workers and failing to provide accurate itemized wage statements. Pending now before me are the plaintiffs' motions (1) for leave to file an Amended Complaint joining affiliated business entities of the defendants, and (2) to modify the conditionally certified FLSA collective action from a Virginia-based

class to a nationwide class.  For the reasons that follow, I will grant the plaintiffs'
motions.

## I.  BACKGROUND.

I previously recounted the facts of this case in my decisions granting the
plaintiffs' motions for conditional certification of the Virginia-based FLSA
collective action and for class certification of the state law claims pursuant to Rule
23 of the Federal Rules of Civil Procedure.  *Stacy v. Jennmar Corp. of Va., Inc.*, No.
1:21CV00015, 2021 WL 4787278 (W.D. Va. Oct. 14, 2021); *Stacy v. Jennmar Corp.
of Va., Inc.*, No. 1:21CV00015, 2022 WL 1442247 (W.D. Va. May 6, 2022).  I will
briefly recount those facts relevant to the present motions.

The present defendants, Jennmar Construction of Virginia, Inc., Jennmar
Corporation of East Virginia, Inc., and Jennmar Construction Tools, LLC,
manufacture and assemble products for use in agricultural, construction, energy, and
mining industries.  The named plaintiffs, Charlie Stacy and Clifford Allen, on behalf
of themselves and those similarly situated, allege that hourly, non-exempt workers
at the defendants' three Virginia-based facilities routinely worked more than 40
hours per week and that the defendants failed to pay them all wages and overtime
wages in violation of federal and state law.  Specifically, they allege that the
defendants' 15-minute time rounding policy, in combination with its mandatory

safety and housekeeping pre-shift work, results in hourly employees performing approximately 20 minutes of unpaid compensable work per shift.

The parties agreed to bifurcated discovery in this case with Phase I to address certification issues and Phase II to address merits issues.  The plaintiffs contend that during Phase I of discovery, they became aware that the defendants' parent company, Frank Calandra, Inc. (FCI), dictated certain uniform rules for hourly workers across the affiliated companies.  Specifically, the defendants' corporate designee, Nicole O'Leath, testified that all employees of FCI and its various affiliates and subsidiaries are subject to the same working hours and compensation policies, including the time-rounding policy, which are maintained and enforced by FCI.  Pls.' Mem. Supp. Mot. Certification Ex. A, O'Leath Dep. 174–79, ECF No. 36-1.  The defendants use the same biometric time clock and electronic timekeeping system at all of the defendants' locations.  *Id.* at 110, 127, 236–37.

There is also evidence that FCI also controls in part the size and makeup of the defendants' workforce.  FCI's corporate human resources department provides input on hiring decisions of hourly personnel at each manufacturing facility, and it is responsible for overseeing the content of employees' earning statements and ensuring compliance with federal and state wage and hour laws.  *Id.* at 162–71.  O'Leath testified that FCI's Chief Executive Officer, Chief Financial Officer,

President, and Vice-President also hold the same corporate officer positions for the present defendants. *Id.* at 161–62.

Based on these facts, the plaintiffs move to amend the Complaint and to join as defendants in this case the following entities: (1) Frank Calandra, Inc.; (2) Calandra Group, LLC; (3) Jennmar Corporation of Utah, Inc.; (4) Jennmar Corporation of West Virginia, Inc.; (5) Jennmar of Pennsylvania, LLC; (6) Jennmar of Kentucky, Inc.; (7) Jennmar of West Kentucky, Inc.; (8) Jennmar Specialty Products - Cedar Bluff, LLC; (9) Jennmar Civil, LLC; (10) JennChem, LLC; (11) JennChem West, LLC; (12) JennChem Mid-West, LLC; (13) JennChem Holdings, LLC; (14) JM Conveyors, LLC; (15) JM Steel Corp.; (16) J-LOK Co.; (17) J-LOK Corp.; (18) XCAL Tools - Madisonville, LLC; (19) XCAL Tools - Clare, LLC; (20) XCAL Tools - Beckley, LLC; (21) XCAL Tools - South Point LLC; and (22) XCAL Tools - Bristol, LLC (formerly known as Jennmar Construction Tools, LLC).[1] The proposed Amended Complaint alleges that that the present and proposed defendants are part of the same single enterprise, with each being either the principal or a subsidiary or affiliate that functions as a unified business operation and that is required to follow the same timekeeping policies in violation of federal law. The

---

[1] The plaintiffs seek to replace Jennmar Construction Tools, LLC, with its current corporate name, XCAL Tools - Bristol, LLC. Pls.' Mem. Supp. Mot. Leave to File Am. Compl. 9 n.4, ECF No. 56. The defendants do not oppose the plaintiffs' motion in this regard. Defs.' Resp. Opp'n 5 n.1, ECF No. 61.

plaintiffs further request that the court expand the scope of the conditionally certified class to include all non-exempt hourly workers at all facilities owned or operated by proposed defendants.

In response, the defendants contend that the amendments are futile and therefore should be denied because the proposed Amended Complaint would not survive subsequent motions to dismiss for lack of personal jurisdiction and for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6) and 12(b)(2) respectively.

The motions have been fully briefed and are ripe for decision.

## II.  LEAVE TO FILE AMENDED COMPLAINT.

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This is a highly permissive standard.  *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010).  Leave to amend "'should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'"  *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation omitted).  Amendment is futile when it "is clearly insufficient or frivolous on its face."  *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).  For example, the court may "disallow[] an amendment when the claim sought to be pleaded by amendment

plainly would be subject to a motion to dismiss." *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 420–21 (4th Cir. 1990).

However, "consideration of the substantive merits of the plaintiff's claim is not appropriate when considering a motion for leave." *Anderson v. Consolidation Coal Co.*, No. 1:11CV138, 2012 WL 5331556, at *3 (N.D. W.Va. Oct. 25, 2012) (citing *Johnson*, 785 F.2d at 510–11). In fact, courts have routinely "declined to deny leave to amend on futility grounds for lack of personal jurisdiction," particularly where the parties have not fully briefed a motion to dismiss. *Pridgen v. Appen Butler Hill, Inc.*, No. JKB-18-61, 2019 WL 1048950, at *3 (D. Md. Mar. 5, 2019) (collecting cases). Put simply, not unless it is plainly evident that the claim could not survive a motion to dismiss should leave to amend be denied.

The defendants make three general futility arguments. First, the defendants contend this court lacks personal jurisdiction over the proposed defendants and the proposed Amended Complaint would not survive a motion to dismiss under Rule 12(b)(2). Second, the defendants argue that the expanded class of putative plaintiffs are not similarly situated since the plaintiffs have failed to establish evidence of a uniform and unlawful policy and thus, the expended action would be subject to dismissal. Finally, they claim that the new defendants are not subject to joinder under Federal Rule of Civil Procedure 20. I will consider each of these arguments in turn.

A.  Personal Jurisdiction.

It is contended that there will be no personal judication by this court in this suit over the out-of-state prospective defendants.  The Supreme Court has long focused such a jurisdictional inquiry "on the nature and extent of 'the defendant's relationship to the forum State.'"  *Ford Motor Co. v. Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citation omitted).  A court must choose between "two kinds of personal jurisdiction: general (sometimes called all-purpose jurisdiction) and specific (sometimes called case-linked jurisdiction)."  *Id.*  For a corporation, general jurisdiction has essentially been limited to two "at home" jurisdictions: (1) principal place of business; or (2) place of incorporation.  *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).  In contrast, specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims."  *Ford Motor Co.,* 141 S. Ct. at 1024.  The defendant must "'purposefully avail[] itself of the privilege of conducting activities within the forum State'" and the suit "'must arise out of or relate to'" those contacts.  *Id.* at 1024, 1025 (citation omitted).  The question here is one of specific jurisdiction.[2]

The defendants cite to *Bristol-Myers Squibb Company v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017) (*BMS*), raising the

---

[2]  I note that at least one proposed defendant — Jennmar Specialty Products - Cedar Bluff, LLC — is alleged to be "organized under Virginia law."  Pls.' Mem. Supp. Mot. to

question of whether the court may assert jurisdiction of FLSA claims of out-of-state plaintiffs.  A full examination of *BMS* is thus necessary.

In *BMS*, the Supreme Court added limits to the relatedness test for specific jurisdiction in a mass tort action.  There, a group of more than 600 plaintiffs — most of whom were not California residents — filed eight separate suits in California state court, alleging various state-law claims related to the sale of an allegedly defective pharmaceutical drug that had been marketed and sold in California.  *Id.* at 1777–78.  The state court thereafter consolidated the individual actions into a single mass-tort action.  *Bristol-Myers Squibb Co. v. Superior Ct. of S.F. Cnty.*, 377 P.3d 874, 878 (Cal. 2016).  The defendant was not a California-based corporation, so there wasn't general jurisdiction.  *BMS*, 137 S. Ct. at 1777–78.  The Supreme Court held that the California court also lacked jurisdiction over the claims made in the suit because the out-of-state plaintiffs' injuries occurred outside of the state, as they neither used the product in California nor resided there.  *Id.* at 1783.

A question is whether *BMS* extends beyond mass tort actions to FLSA collective actions.  The defendants rely upon *Canaday v. Anthem Cos.,* 9 F.4th 392 (6th Cir. 2021), *cert denied*, 142 S. Ct. 2777 (2022), arguing that there is not a sufficient nexus between each putative opt-ins' claims and the proposed defendants'

_____

File Am. Compl. 9, ECF No. 56.  The court presumably would have general jurisdiction over this particular defendant.

conduct in Virginia to establish specific jurisdiction.  In response, the plaintiffs rely upon *Waters v. Day & Zimmerman NPS, Inc.*, 23 F.4th 84 (1st Cir. 2022), *cert. denied*, 142 S. Ct. 2777 (2022), for the opposite position, emphasizing that the jurisdictional inquiry is at the suit level, which is between the named plaintiffs and the defendants, who are alleged to operate as a single enterprise.  The Fourth Circuit has not spoken directly to this issue and there is a growing split among the district courts, with at least two from this circuit holding that *BMS* does not extend to collective actions.  *O'Quinn v. TransCanada USA Servs., Inc.*, 469 F. Supp. 3d. 591, 613 (S.D. W. Va. 2020); *Hunt v. Interactive Med. Specialists, Inc.*, No. 1:19CV13, 2019 WL 6528594, at *3 (N.D. W.Va. Dec. 4, 2019).[3]  After considering these cases, I agree with the approach taken in O'*Quinn* and *Waters* and conclude that *BMS* does not extend to FLSA collective actions.

In *Waters*, the court affirmed the district court's denial of the defendant's motion to dismiss for lack of jurisdiction over out-of-state opt-in plaintiffs.  23 F.4th at 99.  In so holding, the court rejected the Sixth and Eighth Circuits' view that *BMS* — which involved state-law claims brought in state court — also applies to purely federal law claims through a broad interpretation of Federal Rule of Civil Procedure

---

[3]  For a fuller review of this issue, see Anaid Reyes Kipp, Note, *Jurisdiction at Work: Specific Personal Jurisdiction in FLSA Collective Actions After Bristol-Myers Squibb*, 38 Ga. St. U. L. Rev. 941 (2022).

4(k)(1)(A), which they held imposes an additional free-standing jurisdictional limit on federal courts' authority under the Fourteenth Amendment even after service of process has been effectuated. *Id.* at 97–98; *Canaday*, 9 F.4th at 400; *Vallone v. CJS Sols. Grp.*, 9 F.4th 861, 865 (8th Cir. 2021). Such a conclusion is not supported either by Rule 4(k)'s plain meaning or the Court's reasoning in *BMS*.

The *Waters* court first considered Rule 4(k)'s text.[4] While it imposes limits on the initial "*serving a summons*," the court found that "this is not the same thing as saying that Rule 4 or the Fourteenth Amendment governs district court jurisdiction in federal question cases after a summons has been properly served." *Waters*, 23 F.4th at 93. In other words, nowhere does Rule 4(k) contemplate the addition of new parties — and it certainly does not impose a continuing constraint

---

[4] Subsection (k) of Rule 4 provides as follows:

Territorial Limits of Effective Service.

(1) In General. Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:

    (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;

    (B) who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or

    (C) when authorized by federal statute.

Fed. R. Civ. P. (4)(k).

on federal power. *Id.* "[H]ad it been the [rule] drafters' intention," they could have required that "additional plaintiffs may be added to an action if they could have served a summons on a defendant consistent with Rule 4(k)(1)(A)." *Id.* at 94. But that is not what Rule 4(k) requires.

A broader interpretation of Rule 4(k) would also displace other procedural rules. Rule 82 makes clear that "[t]hese rules do not extend or limit the jurisdiction of the district courts." *Id.* (citing Fed. R. Civ. P. 82). And Rule 20 establishes when joinder of additional parties (or claims) to a pre-existing lawsuit is permitted, *id.* at 96 (citing Fed. R. Civ. P. 20(a)(1)(A), (B)), thereby rebutting the Sixth Circuit's warning that reading Rule 4(k)(1)(A) to apply only to the named plaintiff in FLSA actions risks the "limitations on judicial power [being] one amended complaint — with potentially new claims and new plaintiffs — away from obsolescence," *id.* at 98 (quoting *Canaday*, 9 F.4th at 400). This rhetoric also ignores the fact that "the court's jurisdiction is still subject to constitutional limitations — in the case of federal-law claims, the Fifth Amendment." *Id.* at 99.

Second, the *Waters* court rejected the Sixth Circuit's emphasis on the dissimilarities between FLSA collective actions and Rule 23 class actions, namely the opt-in provision and the lower certification standard, thereby likening the FLSA to *BMS*'s mass action. There are stark differences between the two procedures. But "[t]he paramount similarity, and the only one that matters for purposes of assessing

-11-

the district court's jurisdiction, . . . is that the named plaintiff in both [class and collective actions] is the only party responsible for serving the summons, and thus the only party subject to Rule 4." *Id*.

Third, as noted in O'*Quinn*, the Court in *BMS* focused the specific-jurisdiction inquiry at the level of "the suit." *BMS*, 137 S. Ct. at 1780. In a collective action, unlike mass actions, there is only ever one suit — the suit between the named plaintiffs and the defendant. *O'Quinn*, 469 F. Supp. 3d. at 613–14. The fact that additional persons opt-in to the litigation does not fundamentally change this dynamic. *Id.* at 614; *see also Hunt*, 2019 WL 6528594, at *3 (holding that "unlike *Bristol-Myers Squibb*, there is only one suit: the suit between Plaintiff and [the] Defendant[]," and that suit "arise[s] out of or relate[s] to Defendant's contacts") (internal quotation marks and citations omitted).

Finally, I cannot ignore the negative policy implications for addressing nationwide employment practices that would result by extending *BMS* to FLSA collective actions, as well as the absence in the FLSA context of the federalism and state sovereignty concerns expressed in *BMS*. *O'Quinn*, 469 F. Supp. 3d. at 614–15. Applying *BMS* to the FLSA context "would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights." *Id.* at 614 (quoting *Swamy v. Title Source Inc.*, No. C 17-01175 WHA, 2017 WL

5196780, at *2 (N.D. Cal. Nov. 10, 2017)).   The Fourteenth Amendment's due

process limits protect nonresident defendants from being subjected to the state's

"coercive power." *BMS*, 137 S. Ct. at 1779.   But such federalism concerns are

inapplicable to FLSA actions, which are based on federal question jurisdiction,

where the court exercises the sovereign power of the United States, which is limited

only by the Fifth Amendment.   O'*Quinn*, 469 F. Supp. 3d at 614.

Accordingly, I will decline to extend *BMS* to this case.

Although *BMS's* holding does not apply to FLSA collective actions, that does

not resolve whether the proposed defendants are subject to personal jurisdiction in

Virginia for claims brought by the named plaintiffs in this action.   In *Waters* and

*Canaday*, there was only a single employer-defendant.   In this case, however, the

plaintiffs have moved to join as defendants FCI and 21 of its affiliates and

subsidiaries.   The plaintiffs nevertheless have alleged that the defendants operate as

a single enterprise under the FLSA and that the same time rounding policy at issue

in this case is employed at each of their manufacturing facilities.

For separate entities to constitute a single enterprise under the FLSA, they

must conduct "(1) related activities, (2) performed under unified operations or

common control, and (3) for a common business purpose."   *Brock v. Hamad,* 867

F.2d 804, 806 (4th Cir. 1989).   Whether the defendants operate as a single enterprise,

however, is a factual issue — one that is clearly disputed by the parties, as discussed

in greater detail below. *Fisher v. Patterson*, No. 3:19-CV-553-RJC-DCK, 2020 WL 9259759, at *3 (W.D.N.C. Sept. 21, 2020). And "[w]hen jurisdiction turns on disputed facts, the court 'may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question.'" *Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 606 (D. Md. 2015) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)); *see also Fisher*, 2020 WL 9259759, at *3–4.

In *Gilbert*, the plaintiff sued four separately incorporated entities under the FLSA. *Gilbert*, 32 F. Supp. 3d at 599. Two defendants moved to dismiss for lack of jurisdiction, contending that they never employed the plaintiff and they were nonresident LLCs with no contacts in the forum state. *Id.* In response, the plaintiff argued that all four entities were "effectively the 'same enterprise' under the FLSA," and as such, the objecting defendants' employer status and activities (or lack thereof) in the forum were irrelevant. *Id.* at 603, 606 (citation omitted). After determining that the plaintiff alleged sufficient facts in her Complaint to support her same-enterprise theory of liability, the court denied the defendants' motion, deferring final resolution of the jurisdictional question until there was evidence to conclusively establish whether the entities were the same enterprise. *Id.* at 606. The court noted, however, that if the evidence proved this fact, the court would have jurisdiction because one of the entities was "incorporated in [the forum state] and ha[d] sufficient minimum contacts with the jurisdiction." *Id.* at 606.

For these reasons, I find that it is premature to rule on the issue of personal jurisdiction, particularly where there is not a fully supported motion to dismiss before the court. It has been recognized that raising jurisdictional defects at the conditional certification stage "puts the proverbial cart before the horse," reasoning that "personal jurisdiction over potential plaintiffs is a non-issue where the Court need determine *only* whether [the Named Plaintiffs have] met [their] burden of establishing that the putative class members were together the victims of a single decision, policy, or plan." *Warren v. MBI Energy Servs.*, No. 1:19-cv-00800-RM-STV, 2020 WL 5640617, at *2–3 (D. Colo. Sept. 22, 2020) (internal quotation marks and citation omitted) (granting motion for conditional certification over defendants' objections based on lack of personal jurisdiction).

Accordingly, at this stage of the litigation, I do not find that the plaintiffs' proposed amendments to Complaint are futile.

## B.  Failure to State a Claim.

The defendants' second futility argument is that the plaintiffs have failed to establish that there is a uniform and unlawful policy employed by the three current defendants, let alone the 21 proposed additional defendants.  They further contend that there is no evidence that the plaintiffs actually worked for the proposed defendants, or that they would even be liable under the FLSA.  Both of these arguments, however, go to the merits of the plaintiffs' allegations and involve

disputes of fact, including whether the evidence will ultimately prove that defendants' time rounding policy systematically disfavors employees over the long term and who qualifies as an employer for purposes of FLSA liability.  At this stage of the proceedings, I need determine only if the proposed amended complaint is "clearly insufficient or frivolous on its face."  *Johnson*, 785 F.2d at 510.

I find that the proposed Amended Complaint has cleared this fairly low bar. The plaintiffs have sufficiently alleged that the same timekeeping policy at issue is employed at each of the current and proposed defendants' manufacturing facilities. As noted by the defendants, the plaintiffs admitted that they lack personal knowledge of the timekeeping policies used at facilities other than Jennmar's Cedar Bluff facility.  But the defendants' corporate designee, Nicole O'Leath, testified that all hourly employees of FCI's affiliates and subsidiaries are subject to the same compensation policies, including the 15-minute time-rounding policy and the requirement that they not clock in earlier than seven minutes prior to their scheduled shift.  She also affirmed that all hourly employees perform the same or similar work operating heavy machinery at each of the defendants' and proposed defendants' facilities.[5]   She further testified that all hourly personnel must comply with

---

[5]  O'Leath testified specifically that hourly employees "are instructed to clock in within 7 minutes of the start time of their shift." *Id.* at 179.  An employee's timecard captured "the punch in and punch out" time each day and then, "the system rounds based on the punch-in time" in order to calculate the hours per week.  *Id.* at 123, 124.

attendance policies set forth in the FCI Employee Handbook, including pre-shift safety requirements, that are developed and enforced by FCI, or they will be subject to corrective discipline. *Id.* at 40–42, 112–13, 279–90. It may thus be inferred then that their experiences at the Cedar Bluff facility are similar to the hourly employees at FCI's other manufacturing facilities.

In addition, the defendants argue that plaintiffs have failed to allege that the proposed defendants engage in manufacturing aside from conclusory statements that they are affiliates or subsidiaries of FCI. But the plaintiffs have alleged that the proposed defendants are "in the business of manufacturing" and that according to FCI's website, it operates more than 20 "strategically located manufacturing facilities." Pls.' Mem. Supp. Mot. to File Am. Compl. Ex. A, Am. Compl. ¶ 29, ECF No. 56-1. O'Leath also testified extensively about uniform employment policies that are tailored for FCI's various product manufacturing plants. She even described how that the defendants engage in a common business of manufacturing products for above and below ground infrastructure, including operating "bolt" and "beam" facilities in Utah, West Virginia, Pennsylvania, Virginia, and Kentucky. Given these assertions, I do not find that the proposed amended Complaint is clearly insufficient on its face. Moreover, as the parties have yet to engage further discovery, which will focus on common enterprise theories of liability, it is likely

that additional evidence will emerge to further establish whether these defendants are sufficiently similar to be held jointly liable.

### C.   Joinder Under Rule 20.

The defendants raise an additional futility argument that closely tracks their futility argument addressed above.  Specifically, they argue that joinder under Rule 20 is improper, as the plaintiffs have failed to establish a common and *unlawful* policy that was employed by all proposed defendants.

Rule 20 provides for permissive joinder of defendants if they assert  "any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of occurrences" and "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(1).  "Rule 20 gives courts wide discretion concerning the permissive joinder of parties, and should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits."  *Aleman v. Chugach Support Servs.,* 485 F.3d 206, 218 n.5 (4th Cir. 2007) (internal quotation marks and citation omitted).

The plaintiffs allege the existence of a common enterprise that operates numerous manufacturing facilities nationwide, including one location where the plaintiffs were employed.  The plaintiffs further assert that the proposed defendants, together with the three previously named defendants, deprived the plaintiffs and

other hourly employees of all wages earned in violation of the FLSA. The defendants deny both that the time rounding policy is unlawful, and that the proposed defendants operate as a common enterprise. Ultimately, the facts alleged may not prove the plaintiffs' claims. Nevertheless, "that is not for the court's consideration today." *Pontones v. Los Tres Magueyes, Inc.*, No. 5:18-CV-87-H-KS, 2020 WL 12839920, at *2 (E.D.N.C. Feb. 6, 2020) (granting leave to amend complaint to add additional defendants in collective FLSA case where plaintiff claimed common enterprise). Accordingly, I find that joinder of the proposed defendants is proper in this case.

### III. NATIONWIDE FLSA CLASS.

### A. Conditional Certification.

I now turn to plaintiffs' motion to modify the Virginia-based FLSA class to a nationwide class. A court may grant a motion to expand a collective action based upon new evidence. *Wiley v. Asplundh Tree Expert Co.*, No. 2:13-cv-2952, 2013 WL 12182398, at *3 (S.D. W.Va. Nov. 1, 2013). To determine if employees are similarly situated for purposes of a FLSA collective action, the court employs a two-phase analysis. The plaintiffs' present motion implicates only the first phase: conditional certification. And as recounted in my prior decision, the stage-one standard is "fairly lenient," and typically requires "only minimum evidence, such as factual evidence by affidavits or other means." *Stacy*, 2021 WL 4787278, at *2

(citation omitted).[6]  The court may refuse to certify a nationwide class where the evidence is limited to '"geographically clustered plaintiffs' depositions."' *Heitzenrater v. Officemax, Inc.*, No. 12-CV-900S, 2014 WL 448502, at *6 (W.D.N.Y. Feb. 4, 2014) (citation omitted).  However, if considered along with additional persuasive evidence that the policies apply nationwide, the court may nonetheless find that the similarly situated standard is met.  *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642–43 (W.D. Tenn. 2009); *Langlands v. JK & T Wings, Inc.*, No. 15-13551, 2016 WL 4073548, at *3 (E.D. Mich. Aug. 1, 2016).

O'Leath's deposition testimony was not before me when I conditionally certified the Virginia-based collective action.  I now conclude, based on that testimony and the plaintiffs' prior declarations, that the plaintiffs have presented sufficient evidence that the proposed defendants employed the same electronic timekeeping system and time rounding policy, and that all hourly employees were

---

[6]  The defendants argue that I should not follow this two-step certification process and should analyze this case instead under the Fifth Circuit's newly established framework in *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021).  *Swales* held that district courts "should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly." *Id.* at 441.  The Fourth Circuit has yet to decide this issue, but other courts have rejected *Swales*' more stringent approach. *Thomas v. Maximus*, No. 3:21cv498 (DJN), 2022 WL 1482010, at *3 (E.D. Va. May 10, 2022) (collecting cases), *interlocutory appeal denied*, No. 22-185 (4th Cir. July 7, 2022). I, too, decline to follow *Swales*.

subject to the same pre-shift activities, that could prove that hourly employees were disfavored under the rounding policy over the long term.

Accordingly, I will grant the plaintiffs' motion and expand the conditionally certified class to include hourly workers nationwide at any manufacturing facility owned or operated by the defendants within the United States.

### B.  Notice to Potential Opt-In Plaintiffs.

I next consider the plaintiffs' request for court-facilitated notice.  I previously approved notice and supplemental notice to the Virginia-based FLSA class.  *Stacy*, 2021 WL 4787278 at *4–5; *Stacy v. Jennmar Corp. of Va., Inc.*, No. 1:21CV00015, 2022 WL 1442246, at *2 (W.D. Va. May 6, 2022).  The plaintiffs have proposed a similar method for facilitating notice to potential nationwide opt-in plaintiffs. Specifically, the plaintiffs request that the court require the defendants to produce the names, job titles, last known mailing addresses, date of employment, and locations of employment of all potential class members within the past three years. The plaintiffs seek to send the notice and opt-in consent forms via first-class U.S. mail to all class members — excluding the Virginia-based members previously notified — and class members will thereafter have 60 days from the date of mailing to opt-in by returning their signed consent forms.  In addition, the plaintiffs request that the court approve reminder notices to be sent 30 days after the initial mailing to all nonresponding class members.

The proposed Notice also includes the option for putative opt-ins to join the class by completing a consent form on a website. Following the court's request for supplemental briefing on this issue, the plaintiffs clarified that a third-party administrator, ILYM Group, Inc., will create and administer the website. It will be designed for the limited purpose of allowing putative opt-ins to join the class by submitting the consent form online, instead of by regular mail, and will contain only the approved language from the Notice form. The proposed Notice includes a placeholder for the website's URL address, pending the court's approval. The defendants do not oppose the plaintiffs' proposed use of a standalone website.

I find that the plaintiffs' proposed method of notice is appropriate in this case, including the website. *Stacy*, 2021 WL 4787278, at *4–5; *Stang v. Paycor, Inc.*, No. 1:20-cv-00882, 2022 WL 354593, at *5 (S.D. Ohio Feb. 7, 2022). Other courts in this circuit have permitted consent forms to be submitted via a standalone website in FLSA actions. *McCoy v. Transdev Servs., Inc.*, No. DKC 19-2137, 2020 WL 2319117, at *8 (D. Md. May 11, 2020). Accordingly, I agree that it is appropriate to do so in this case. However, as with notice to Virginia-based members, I will not approve reminder notices within 30 days of the initial mailing at this time, with the expectation that the plaintiffs may later request reminder notices if they can demonstrate that such a reminder is necessary. *Stacy*, 2021 WL 4787278, at *5; *Stacy*, 2022 WL 1442246, at *2.

IV. CONCLUSION.

For the reasons stated, it is **ORDERED** as follows:

1. Plaintiffs' Motion for Leave to File Amended Complaint, ECF No. 55, is GRANTED and the plaintiffs are granted leave to file an Amended Class and Collective Action Complaint in the form attached to their Memorandum of Law in Support of their Motion for Leave to File amended Complaint, ECF No. 56-1, provided it is filed within 14 days of this Order;

2. Plaintiffs' Motion to Modify the Collective Action Class Conditionally Certified under 29 U.S.C. § 216(b), ECF No. 57, is GRANTED;

3. The conditionally certified class by this court under the Fair Labor Standards Act, 29 U.S.C. § 216(b), is hereby modified to include all individuals who work or have worked for defendants as non-exempt employees at any manufacturing facility owned or operated by the Defendants within the United States, at any time within the three-year period prior to the filing of this action to the date of final disposition of this action;

4. Defendants must provide within 28 days to Plaintiffs' counsel an updated list of the names, job titles, last known mailing addresses, dates of employment, and location of employment, for all putative plaintiffs;

5. A copy of the notice, Exhibit A, ECF No. 58-1, and the opt-in form, Exhibit B, ECF No. 58-1, shall be provided via first-class mail to all members of the conditionally certified collective action class, with any modifications consistent with this Opinion and Order;

6. A properly signed copy of the opt-in form must be returned or postmarked no later than 60 days from the mailing of the notice; and

7. This case is otherwise stayed until the conclusion of the opt-in period.

ENTER:   August 25, 2022

/s/  JAMES P. JONES
Senior United States District Judge