**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

September 30, 2025
LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
DEPUTY CLERK

| | |
|---|---|
| **CHARLIE STACY and CLIFFORD ALLEN, individually and on behalf of all others similarly situated,** ) ) ) ) ) | |
| Plaintiffs, ) | Case No. 1:21CV00015 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **JENNMAR CORPORATION OF VIRGINIA, INC., et al.,** ) ) ) | JUDGE JAMES P. JONES |
| Defendants. ) | |

*Argued: Robert W. T. Tucci, ZIPIN, AMSTER & GREENBERG, LLC, Silver Spring, Maryland, for Plaintiffs; K. Maxwell Bernas, FORDHARRISON LLP, Atlanta, Georgia, and Benjamin P. Fryer, FORDHARRISON LLP, Charlotte, North Carolina, for Defendants.*

In this hybrid collective and class action involving alleged systematic efforts to underpay hourly employees of the defendants, the defendants have filed motions for class decertification and summary judgment. Dkt. Nos. 117, 119. The plaintiffs have filed motions for partial summary judgment, to exclude expert testimony, and for sanctions. Dkt. Nos. 121, 123, 128. For the reasons discussed below, the defendants' Motion for Summary Judgment will be DENIED. The plaintiffs' Partial Motion for Summary Judgment will be GRANTED in part and DENIED in part. The Motion for Class Decertification will be DENIED. The Motion to Exclude

Expert Testimony will be DENIED. Lastly, the Motion for Sanctions will be GRANTED in part and DENIED in part.

## I. BACKGROUND.

Jennmar[1] manufactures and assembles products for use in agricultural, construction, energy, and mining industries, with locations across the United States. The plaintiffs are current and former hourly employees of Jennmar. The plaintiffs allege that Jennmar failed to pay employees wages and overtime in violation of federal and state law. Specifically, the plaintiffs allege that Jennmar's fifteen-minute time rounding policy, combined with mandatory safety and housekeeping pre-shift work, results in hourly employees performing approximately twenty minutes of unpaid compensable work per shift. Jennmar maintains that they prohibit hourly employees from any off-the-clock work, and that any off-the-clock work performed by the employees is either de minimis or non-compensable.

Jennmar has now moved to decertify the collective action under the Fair Labor Standards Act (FLSA) and the class action under Federal Rule of Civil Procedure 23. Jennmar also asserts that it is entitled to summary judgment as to the lack of personal jurisdiction, any claims for off-the-clock work, the rounding policy, and a willful violation of federal law. The plaintiffs argue that they are entitled to

---

[1] For convenience, I will refer to the defendants collectively as Jennmar, except as necessary for the context.

summary judgment as to Jennmar jointly employing the plaintiffs, the rounding practice, breach of contract and quantum meruit claims, a good faith defense to liquidated damages, the willfulness of Jennmar's alleged violations, Jennmar's knowledge of their alleged violations of state law, and Jennmar's stated defenses.[2]

The plaintiffs have also moved for sanctions against Jennmar for improperly obtaining declarations from employee witnesses. Lastly, the plaintiffs seek to exclude the testimony of Richard A. Goldberg, an expert witness for Jennmar.

## II. DECERTIFICATION UNDER THE FLSA.

Courts in the Fourth Circuit follow a two-stage approach to certification under the Fair Labor Standards Act (FLSA). *Mendoza v. Baird Drywall & Acoustic, Inc.*, No. 7:19-CV-882, 2021 WL 2435873, at *3 (W.D. Va. June 15, 2021). First, the court determines whether the plaintiffs have demonstrated that the putative class members are "similarly situated" and that "court-facilitated notice to the putative class members would be appropriate." *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010).[3] The standard for conditional certification is "fairly lenient" and requires only "minimal evidence." *Mendoza* 2021 WL 2435873 at *3. I previously authorized conditional certification of the putative collective action. *Stacy v.*

---

[2] The plaintiffs are not seeking summary judgment on their off-the-clock claims regarding unpaid pre-shift work performed prior to clocking in, nor on the amount of overtime compensation they believe Jennmar owes.

[3] Internal quotation marks, citations, and alterations have been omitted here and throughout this opinion, unless otherwise noted.

*Jennmar Corp. of Va., Inc.*, No. 1:21CV00015, 2021 WL 4787278 (W.D. Va. Oct. 14, 2021)

The second stage occurs if a defendant files a motion for decertification, generally after discovery is complete. *Spencer v. Macado's, Inc.*, No. 6:18-CV-00005, 2019 WL 4739691, at *2 (W.D. Va. Sept. 27, 2019). The court once again determines whether the collective members are similarly situated, this time applying a heightened fact-specific standard. *Id.* If the court determines that the members are, in fact, similarly situated, the collective action proceeds to trial. *Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296, 299 (W.D.N.C. 2013). Otherwise, the court decertifies the collective, and the plaintiffs may proceed individually. *Id.*

Collective members have been found to be similarly situated when they "raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011). However, the similarly situated requirement does not prohibit differences among collective members or individualized inquiries. *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-CV-00363, 2012 WL 4739534, at *11 (E.D. Va. Oct. 2, 2012).

I must now undertake the more rigorous question of whether the parties are, in fact, similarly situated under a heightened standard. When analyzing the similarly

situated nature of plaintiffs for purposes of decertification, district courts have typically considered (1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the employer's defenses would need to be applied individually to each plaintiff; and (3) fairness and procedural concerns. *Sharer v. Tandberg, Inc.*, No. 1:06CV626(JCC), 2007 WL 676220, at *2 (E.D. Va. Feb. 27, 2007).

Jennmar contends that the plaintiffs cannot identify a systematic, enterprise-wide policy and practice implemented by Jennmar that required the plaintiffs to perform essential job duties before or after their scheduled shift times. Accordingly, Jennmar asserts that the plaintiffs' claims are too individualized to proceed on a collective basis. Jennmar also contends that the plaintiffs identified no record evidence showing that the rounding policy deprived the plaintiffs of compensable time. Further, Jennmar argues that any time the plaintiffs incurred prior to the start of their shift was spent in the breakroom (where the plaintiffs would watch television, use their phones, and chat with colleagues), and that any preparatory work that occurred before or after shifts was de minimis. Additionally, Jennmar argues that named plaintiffs Stacy and Allen's knowledge is limited to the Jennmar Virginia's Cedar Bluff facility.

I find that the plaintiffs have identified key facts to demonstrate a similar employment setting, and therefore, Jennmar's defenses need not be applied to each plaintiff individually.  For example:

- Jennmar has a written timekeeping policy, despite their assertion that they do not;

- The timekeeping and compensation policies for hourly work, including the rounding policy, are applicable to all hourly employees; and

- The plaintiffs could not perform all demands and duties within their assigned shifts.

I also find that fairness and procedural concerns weigh in favor of certification.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ("A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.").  Lastly, even if the named plaintiffs have limited personal knowledge as to the conditions of other collective members, their knowledge reflects policies applicable across Jennmar's facilities.  I will deny the Motion to Decertify as to the collective action under the FLSA.

III.  DECERTIFICATION UNDER RULE 23.

I previously granted the plaintiffs' Motion to Certify Class regarding their state law claims pursuant to Rule 23(b)(3).  *Stacy v. Jennmar Corp. of Va., Inc.*, No. 1:21CV00015, 2022 WL 1442247 (W.D. Va. May 6, 2022).  There, I determined that the plaintiffs proffered sufficient evidence to satisfy the commonality and predominance requirements of Rule 23.[4]  Specifically, I found that the then-putative class members' allegation that Jennmar's rounding practice violated Virginia law — because, over time, hourly employees would not be compensated for all hours actually worked — would generate a common answer that would resolve the claims "in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  I also found that the subtle differences that Jennmar cited to — including different facilities manufacturing different products or being operated by separate management — did not predominate over the common questions of law or fact.

Jennmar now points to a Fourth Circuit opinion issued after this court's grant of class certification — *Stafford v. Bojangles' Restaurants, Inc.*, 123 F.4th 671 (4th Cir. 2024).  There, the classes at issue were defined as "All persons who worked as a shift manager at Bojangles in the state of [North Carolina/South Carolina] at any time from three years prior to the filing of this Complaint to the entry of judgment

---

[4]  Jennmar objected to class certification only as to the commonality and predominance requirements of Rule 23.

in the case." *Id.* at 677.  The Fourth Circuit held that the district court erred in defining the class so broadly, in that "[n]o reference [wa]s made to the type of off-the-clock work class members performed or whether a class member even performed off-the-clock work *at all*." *Id.* at 681.  For the reasons discussed above, I find the present facts to be sufficiently distinguishable.  I will deny the Motion to Decertify as to the Rule 23 class action.

## IV.    EXCLUSION OF EXPERT TESTIMONY.

Judges have broad discretion in deciding whether to admit expert testimony pursuant to Federal Rule of Evidence 702.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141–42 (1997).  The court must ensure that the expert's opinions are both relevant and reliable.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  The party proffering the evidence must establish its admissibility by a preponderance of the evidence.  Fed. R. Evid. 702 advisory committee's note to 2023 amendment.  In determining whether expert testimony is reliable, courts should balance the fact that Rule 702 "was intended to liberalize the introduction of relevant expert evidence" with the potential expert testimony has to "be both powerful and quite misleading. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999).  *Daubert* also requires that courts evaluate the methodology underlying the expert's opinion rather than evaluating the conclusions themselves.  *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017).

If a witness qualifies as an expert by knowledge, skill, experience, training, or education, they may testify in the form of an opinion. Fed. R. Evid. 702. The testimony must (1) help the factfinder understand the evidence or determine a fact at issue; (2) rely on sufficient facts or data; (3) result from reliable principles and methods; and (4) reflect the reliable application of those principles and methods to the facts of the case. *Id.*

Richard A. Goldberg is an expert witness retained by Jennmar. Goldberg is a partner at Resolution Economics LLC, a firm that conducts economic and statistical analyses related to litigation and consulting matters. As relevant here, his work includes evaluating large data sets, such as timeclock entries and payroll information.

The plaintiffs contend that the methodology employed by Goldberg is not reliable. Specifically, the plaintiffs argue that Goldberg does not address (1) how unpaid hours worked should be calculated; (2) how unpaid wages should not be calculated; and (3) the effects of Jennmar's rounding practices. Further, the plaintiffs contend that Goldberg's testimony would not assist the factfinder to understand the evidence, is irrelevant, and is not rooted in personal knowledge. I find no merit in the plaintiffs' assertions.

Goldberg based his conclusions on timekeeping and payroll data provided by Jennmar, the same data received by Jon Michael DuMond, the plaintiffs' expert

witness. Goldberg relied on this data to calculate a series of summary statistics for each employee (including averages, medians, and the percentages of shifts with rounding above or below certain thresholds). Given that both sides have conceded to the accuracy of the timekeeping record, I find that Goldberg based his conclusions upon reliable data. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529–30 (6th Cir. 2008) ("The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation."). Goldberg also attests to using the same methodology as Jennmar's expert DuMond to determine the number of allegedly rounded minutes for each shift. I further find that Goldberg's testimony would, indeed, assist the trier of fact. I will deny the Motion to Exclude the testimony of Goldberg.

## V.  SANCTIONS.

### A.

The plaintiffs also seek sanctions against Jennmar. The alleged misconduct consisted of Jennmar's filing of seventeen declarations: four from represented class members and thirteen from witnesses who Jennmar failed to disclose during discovery. As a result, the plaintiffs request that the court:

1. Strike Jennmar's motions and all papers filed in connection with them, as the declarations are used extensively throughout;

2. Order the line of evidence arising from the declarations be excluded from the trier of fact;

3. Order Jennmar and FordHarrison to pay the plaintiffs' attorney's fees for causing the plaintiffs to file the Motion for Sanctions and respond to Jennmar's motions; and

4. Disqualify FordHarrison from further representation of Jennmar in this litigation.

The sanctionable conduct of Jennmar and FordHarrison includes the following: Jennmar and/or counsel engaged in ex parte communications with class members for the purpose of obtaining declarations, and through doing so, Jennmar and their counsel misrepresented the nature and scope of this litigation,[5] and this allegedly inadvertent conduct was done at the behest of FordHarrison.

After conferring with Class Counsel, FordHarrison confirmed that (1) Jennmar had, allegedly inadvertently, reached out to and discussed the case with class members ex parte to secure the declarations; (2) FordHarrison directed Jennmar to obtain the declarations; and (3) FordHarrison did not distinguish class members from the individuals who opted out of the class. FordHarrison then stipulated that Jennmar agreed to (1) withdraw the seventeen declarations at issue;

---

[5] For example, one represented employee, John Boyd, was not informed by Jennmar that he was being asked to sign a sworn declaration.

(2) not use the declarations for any purpose in this case, including impeachment purposes; and (3) attempt no further ex parte communication with class members and/or the plaintiffs regarding the case by Jennmar, their counsel, and their agents. FordHarrison further indicated that they did not believe disqualifying sanctions were warranted.

Federal courts have the inherent power to impose sanctions for a broad range of misconduct beyond that conferred by statute or rule. *Chambers v. NASCO Inc.*, 501 U.S. 32, 50–51 (1991). Sanctions may be imposed where there has been willfulness, bad faith, or fault. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976). Bad faith may be presumed where the offending party has engaged in a pattern of abuse. *Mey v. Phillips*, 71 F.4th 203, 220 (4th Cir. 2023).

The question, then, is whether further sanctions are necessary in addition to (1) striking the seventeen declarations at issue (Defs.' Mem. Supp. Mot. Decertify Exs. 13–29, Decls., Dkt. Nos. 118-13–29; Defs.' Mem. Supp. Mot. Summ. J. Exs. 13–29, Dkt. Nos. 120-13–29); (2) ordering Jennmar not to use the declarations for any purpose; and (3) an order restraining Jennmar, its counsel, and their agents from any further ex parte communication with any class members or the named plaintiffs in this case.

Rule 4.2 of the Virginia Rules of Professional Conduct states: "In representing a client, a lawyer shall not communicate about the subject of the representation with

a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

In discussing the prohibition against post-certification contact with represented class members, the plaintiffs rely on *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985). In *Kleiner*, the defendants attempted to force class members out of the class. They contacted potential members of the class despite warning from counsel that it would "likely to provoke the wrath of the court." *Id*. at 1197. The court described the attempt as one that was conducted in "secrecy and haste." *Id*. Neither opposing counsel nor the court were alerted to the campaign. *Id*.

In the present case, the plaintiffs state that the conduct of Jennmar and counsel was "unethical, deceptive, abusive, and disruptive." Pls.' Mem. Supp. Mot. Sanctions 18, Dkt. No. 129. But the plaintiffs have provided no evidence of the sort of willful, bad faith conduct designed to "provoke the wrath of the court" with a tactical move conducted in "secrecy and haste." *Kleiner*, 751 F.2d at 1197. Jennmar has acknowledged their mistake and have stipulated to measures to ameliorate that mistake.

### B.

The plaintiffs also argue that Jennmar violated the Federal Rules of Civil Procedure by failing to disclose the identity of the 13 non-class member declarant

witnesses. Rule 37(c) provides that, where a party fails to provide information or identify witnesses as required by Rule 26(a) or (e), the party may not use that information or witness unless such evidence is "substantially justified" or "harmless." Fed. R. Civ. P. 37(c). The Rule further provides that attorney's fees, notifying the jury of the party's failure, and other sanctions are appropriate at the court's discretion. *Id.*

The plaintiffs concede that Jennmar's stipulation to withdraw the unlawfully obtained declarations likely mitigates future dispute as to whether the failure to disclose was substantially justified or harmless. Nonetheless, the plaintiffs ask this court to impose more robust sanctions to deter Jennmar and future litigants from engaging in "discovery sandbagging and gamesmanship." Pls.' Mem. Supp. Mot. Sanctions 21, Dkt. No. 129. Given FordHarrison's acknowledgment of Jennmar's misconduct and stipulation to withdrawing the declarations, the plaintiffs' request that this court impose more robust sanctions is unpersuasive.

### C.

Next, the plaintiffs argue that Jennmar's extensive reliance on the declarations requires this court strike Jennmar's motions and all documents that rely upon the declarations. This court can resolve the motions while disregarding the declarations at issue.

D.

The plaintiffs also argue that the court should impose monetary sanctions on Jennmar and FordHarrison. Specifically, they seek attorney's fees for their efforts in responding to Jennmar's motions, as well as any future briefing, hearings, and costs that relate to the Motion for Sanctions.

District courts are owed substantial deference when deciding whether to impose sanctions such as attorney's fees. *Blue v. U.S. Dep't of Army*, 914 F.2d 525, 538 (4th Cir. 1990). Monetary sanctions for attorney's fees are appropriate where a litigant or attorney engages in wrongful conduct. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980) ("If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes."). District courts may consider factors such as the "minimum amount of sanctions needed to deter future abuses, the reasonableness of the requested fees and costs, and [the offending parties'] ability to pay." *Byrd v. Hopson*, 108 F. App'x 749, 756 (4th Cir. 2004) (unpublished).

I find that sanctions should be imposed against Jennmar for reasonable attorney's fees and costs for its past services in dealing with the declarations, including discussions with opposing counsel, and the preparation of the Motion for Sanctions. The hearing will be excluded from fees and costs awarded because the predominant issues raised by the parties during the hearing were unrelated to the

declarations.  The plaintiffs are directed to file within 21 days hereafter the time and other records justifying the fees and costs requested in accord with the Court's ruling herein.  Counsel for Jennmar may respond within 14 days after such filing and the plaintiffs may reply within 7 days thereafter.

E.

Additionally, the plaintiffs have moved to disqualify FordHarrison as counsel in this matter.  Disqualification motions are reviewed by balancing the interests of the parties, "along with basic concepts of fundamental fairness in view of the circumstances of the case."  *United States v. Esposito*, Nos. 86-5097, 86-5098, and 86-5115, 1987 WL37105 (4th Cir. Apr. 13, 1987) (unpublished) (discussing the standard applicable to motions for disqualification where one party anticipates a conflict of interest).  The district court must evaluate whether proceedings are "likely to have the requisite integrity if a particular lawyer is allowed to represent a party." *United States v. Williams*, 81 F.3d 1321, 1324 (4th Cir. 1996) (noting the applicable considerations for disqualification in the event of attorney conflicts).  Prejudice is minimal and capable of being addressed with attorney's fees and withdrawal of the declarations.  Thus, I find disqualifying FordHarrison for negligence as too extreme a remedy that would prejudice Jennmar.[6]

---

[6] FordHarrison and Jennmar were not the only ones that acted negligently here. The plaintiffs drafted a motion and brief to exclude Richard A. Goldberg.  In their brief, they referenced Dr. Johannson, an expert not present in this case.  Jennmar points out that this

## VI.  Summary Judgment.

Both parties have moved for summary judgment.  Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if its existence or non-existence might affect the outcome of the litigation.  *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

### A.  Personal Jurisdiction.

District courts may exercise personal jurisdiction over non-resident defendants only where (1) it is permitted by the long-arm statute of the forum state; and (2) application of the long-arm statute comports with federal due process. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).  A court may assert general or specific jurisdiction to establish personal jurisdiction. General jurisdiction may be asserted if the forum state is the corporation's home state, where the defendant is incorporated or where the corporation's principal place of business is located.  *Goodyear Dunlop Tires Operations, S.A. v. Brown ex rel. Brown*, 564 U.S. 915, 924 (2011).  Specific jurisdiction may be asserted if the claims

---

is because the plaintiffs' brief appears to be copied and pasted from another brief.  I am inclined to give the benefit of the doubt to both firms, even as I acknowledges these errors.

arise out of the corporation's sufficient contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

For this court to have personal jurisdiction over Jennmar, the plaintiffs are required to show that (1) Jennmar purposefully availed itself of activity in Virginia; (2) their claims arose out of Jennmar's activities directed at Virginia; and (3) this court's exercise of personal jurisdiction over Jennmar would be constitutionally reasonable. *See Sneha Media & Ent., LLC v. Associated Broad. Co. P. Ltd.*, 911 F.3d 192, 198 (4th Cir. 2018) (discussing the minimum contacts necessary under the Due Process Clause for a federal court to exercise personal jurisdiction over a company). Jennmar contends that this court lacks personal jurisdiction over certain out-of-state defendants.[7]

In response, the plaintiffs argue that the FLSA claims of the Virginia-based plaintiffs and out-of-state plaintiffs arise from Jennmar's uniform timekeeping and payroll practices that Jennmar applies at all its facilities, both inside and outside of Virginia. Because these policies and practices applied to all class members, including those based in Virginia, the plaintiffs assert that this court does have

---

[7] These defendants are Jennmar Corporation Utah, Jennmar West Virginia, Jennmar Pennsylvania, Jennmar Kentucky, Jennmar West Kentucky, Jennmar Civil, JennChem, JennChem West, JennChem Mid-West, JennChem Holdings, JM Conveyors, JM Steel, J-LOK Co., J-LOK Corp., XCAL Tools Madisonville, XCAL Tools Clare, XCAL Tools Beckley, and XCAL Tools South Point.

personal jurisdiction. Alternatively, the plaintiffs argue that even if this Court lacks personal jurisdiction, Jennmar has waived the issue.

To determine whether personal jurisdiction was validly waived, courts have looked to the length of time between service of process to when a defendant raises a personal jurisdiction defense. *Matthews v. Brookstone Stores, Inc.*, 431 F. Supp.2d 1219, 1224 (S.D. Ala. 2006). Courts also look to how involved the defendant has been in the litigation, finding it more likely that an active defendant will have impliedly waived the defense. *Id.* at 1225. Here, Jennmar raised the lack of personal jurisdiction defense on October 6, 2022. Defs.' Answer Am. Compl. 20, Dkt. No. 75. I do not find that the one and a half year time lapse between commencement of the litigation and pursuit of the defense amounts to a waiver of the defense. *See, e.g.*, *Cont'l Bank, N.A. v. Meyer ex rel. Lubin,* 10 F.3d 1293, 1297 (7th Cir. 1993) (finding waiver where defendants did not actively contest personal jurisdiction for more than two and a half years after asserting the defense).

According to Jennmar, the plaintiffs have proffered no evidence to establish that the out-of-state defendants are incorporated or headquartered in Virginia, or that they have had sufficient contacts with the state, such as employing potential opt-in members in Virginia. However, if the defendant entities operated as a single enterprise, jurisdiction would be appropriate. I will deny summary judgment as to the out-of-state defendants.

B.  CLAIMS REGARDING OFF-THE-CLOCK WORK.

When evaluating alleged FLSA violations on a collective basis, enforcement decisions must stem from a company-wide policy or plan, rather than decisions of individual supervisors.  *Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 941 (D. Minn. 2009).  Jennmar argues that there is no evidence of a uniform and unlawful policy employed by multiple supervisors across their facilities.  Specifically, Jennmar claims that they prohibited hourly employees from engaging in off-the-clock work.  Moreover, the named plaintiffs testified that they have never worked at any Jennmar facility other than Jennmar Virginia's Cedar Bluff Facility and that their knowledge is limited to such.

I find that there are genuine disputes of material fact as they relate to the existence of a practice requiring off-the-clock work.  It does not appear that Jennmar had an explicit, written policy requiring employees to work off the clock.  But viewed in the light most favorable to the plaintiffs, evidence has been proffered as to a practice of such work given the presence of employees in the facility approximately 30 minutes early every day. Defs. Mem. Supp. Mot. Summ. J. Ex. 6, Stacy Dep. 79:1–8, Dkt. No. 120-6; Ex. 7, Allen Dep. at 24:11–22, Dkt. No. 120-7.

Of course, the mere fact that employees arrived early and were permitted to sit in the break room does not establish that the FLSA was violated.  *See Weil v. Metal Techs., Inc.*, 925 F.3d 352, 357 (7th Cir. 2019) (noting that "employees who

clock in early do not have to be paid so long as they are not working."). But in the present case, it appears from the record that some employees felt obligated to arrive early. During this time, they sometimes engaged in safety and housekeeping pre-shift work. Whether they were reasonable in feeling obligated to do so is a question of fact to be decided at trial. Questions also remain as to whether these practices occurred at other Jennmar facilities, and if so, how frequently these practices and off-the-clock work occurred. I will deny summary judgment as to the off-the-clock work claims.

## C. CROSS-MOTIONS REGARDING THE ROUNDING POLICY.

The FLSA permits employers to utilize rounding practices so long as "employees are fully compensated for all the time they actually work." 29 C.F.R. § 785.48(b). Compensable time is the time between the employee's first and last principal activities. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29 (2005). Rounding practices are thus permitted where employees are compensated for the full time they have worked, and where the rounding policy is "neutral, both facially and as applied." *Corbin v. Time Warner Ent.-Advance/Newhouse P'ship*, 821 F. 3d 1069, 1076 (9th Cir. 2016). When evaluating the validity of a rounding policy, "[i]t will often be that over some time periods employees are undercompensated, while over other periods they are overcompensated or neutrally compensated." *Houston v. Saint*

*Luke's Health Sys., Inc.*, 76 F.4th 1145, 1150 (8th Cir. 2023).  However, courts must be careful to "distinguish statistical anomaly from discernable pattern."  *Id.*

Jennmar argues that the rounding policy fully compensated the plaintiffs for all the time they actually worked.  This is because, according to Jennmar's view, the plaintiffs cannot show that they engaged in compensable work prior to the start of their scheduled shifts.  If this is true, and if it is also true that employees regularly clock in right around the scheduled start time of their shifts, then the rounding policy neither harms nor benefits the plaintiffs, as it averages out.  Jennmar also notes that when employees arrive early, they may watch television, use their phone, or chat with colleagues.  Moreover, according to Jennmar, pre-shift and post-shift activities are completed while clocked in.

Jennmar's timekeeping policy requires that employees do not engage in off-the-clock work.  It also prohibits employees from clocking in more than seven minutes early, or more than seven minutes after the end of their shift.  But even if the timekeeping policy appears to be facially neutral, it is likely that the policy is not neutrally applied.

The data show that 92.7% of plaintiffs lost net time and pay due to rounding.  Pls.' Mem. Supp. Mot. Partial Summ. J. Ex. K, DuMond Decl. 16, Dkt. No. 122-11.  This is not to say that every employee must receive benefits for clocking in early under the FLSA — far from it.  But where a policy benefits the employer and causes

the plaintiffs to render unpaid labor 92.7% of the time, it likely cannot be said to be neutral.  *See Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270, 1288 (10th Cir. 2020) (noting that "a rounding policy that works in the employer's favor 94% of the time is probably not neutrally applied.").

Jennmar alternatively argues that the unrecovered compensable time is de minimis.  Any time less than one minute is de minimis, even where it is an integral activity.  *Albrecht v. Wackenhut Corp*., No. 07-CV-6162, 2009 WL 3078880 (W.D. N.Y. Sept. 24, 2009), *aff'd*, 379 F. App'x 65 (2d Cir. 2010) (unpublished).  Jennmar argues that donning and doffing personal protective equipment and receiving paperwork and instructions are de minimis.  But in the aggregate, lost wages and prejudgment interest through February 14, 2024, amounted to $1,073,997.24. DuMond Decl. 22., Dkt. No. 122-11.  And on average, employees were on the clock for 5.27 more minutes each shift than they were actually paid for.  *Id*. at 4.[8]

Taken together, these tasks are likely not de minimis.  And viewed in the light most favorable to the plaintiffs, the rounding policy is likely not neutral as applied. But these findings rest on whether the work completed by the plaintiffs was compensable.  *See Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 367, 374–75 (4th

---

[8] At oral argument, defense counsel countered that the plaintiffs were not allowed to access the floor until their shift starts.  Even assuming that were true, it does not defeat the fact that plaintiffs were given paperwork to complete prior to entering the floor and received instructions on their tasks for the day at least some of the time.

Cir. 2011) (finding that donning and doffing protective gear at the beginning and end of a shift was "integral and indispensable" to chicken processing, and that spending approximately ten minutes doing so each day was not de minimis).

I find that the plaintiffs have not successfully demonstrated that all or a substantial portion of the time lost under the rounding policy is actually compensable time, and that a genuine issue of fact exists as to such. Accordingly, the Cross-Motion for Summary Judgment is denied as it relates to the rounding policy.

### D. CROSS-MOTIONS REGARDING WILLFUL VIOLATIONS OF THE FLSA.

The FLSA provides for a three-year statute of limitations when a cause of action arises out of a willful violation. 29 U.S.C. § 255(a). A willful violation under the FLSA is one in which the defendant "knew or showed reckless disregard for the matter of whether its conduct was prohibited" by the FLSA. *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 130 (4th Cir. 2015). The plaintiffs assert that Jennmar willfully violated the FLSA because their Employee Handbook explicitly requires that workers be compensated for overtime.

The plaintiffs are focused on the wrong inquiry. The question here is not whether Jennmar knew that they were required to pay employees for overtime. Rather, the issue is whether the additional time the employees worked constituted compensable time under the FLSA. Accordingly, summary judgment is denied.

E.  Joint Employer Liability under
the FLSA and Virginia Law.

The FLSA defines covered employers and employees broadly.  *See* 29 U.S.C. § 203 (defining "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," and defining "employee" as "any individual employed by an employer").

The Virginia Wage Payment Act (VWPA) defines "employer" as "an individual, partnership, association, corporation, [or] legal representative . . . doing business in or operating within this Commonwealth who employs another to work for wages, salaries, or on commission and shall include any similar entity acting directly or indirectly in the interest of an employer in relation to an employee."  Va. Code Ann. § 40.1-2.  The VWPA defines "employee" as "any person who, in consideration of wages, salaries, or commissions, may be permitted, required, or directed by an employer to engage in any employment directly or indirectly."  *Id.*

Two or more entities may constitute joint employers pursuant to FLSA. *Salinas v. Com. Interiors, Inc.*, 848 F.3d 125, 133–34 (4th Cir. 2017). Joint employers are those in which "employment by one employer is *not completely disassociated* from employment by the other employer."  *Id.* at 134.  An employee working for joint employers is considered to have "one employment" for purposes of complying with the FLSA's wage and hour requirements.  *Id.* (quoting *Schultz v.*

*Cap. Int'l Sec., Inc.*, 466 F.3d 298, 305, 307, 310 (4th Cir. 2006)).  Joint employers are held jointly and severally liable for violations under the FLSA.  *Id.*

Here, the plaintiffs argue that all the defendants constitute a single enterprise and should thus be held jointly liable to the plaintiffs.  Multiple entities may constitute a "single enterprise" when they conduct "(1) related activities, (2) performed under unified operations or common control, and (3) for a common business purpose."  *Brock v. Hamad*, 867 F.2d 804, 806 (4th Cir. 1989).  Jennmar asserts that the plaintiffs conflate the issue of constituting a single enterprise — which relates to coverage under the FLSA — with joint liability.  It is true that some courts have treated enterprise analysis as separate from the issue of liability.  *See, e.g.*, *Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 969, 971 (5th Cir. 1984).  However, "the Fourth Circuit has long used the single enterprise theory for the purpose of holding an employer liable under the FLSA."  *Beckley v. Priority Auto. Huntersville Inc.,* No. 3:21-CV-00072-RJC-DSC, 2021 WL 8053728, at *6 (W.D.N.C. June 21, 2021), *R. & R. adopted in part, rejected in part, sub nom. Beckley v. Priority Auto Grp., Inc.*, No. 3:21-CV-00072-RJC-DSC, 2022 WL 899453 (W.D.N.C. Mar. 28, 2022).

Jennmar argues that material facts are in dispute as to whether all the defendants constitute a single enterprise, given that they manufacture separate and distinct products nationwide and that each entity is led by separate onsite

-26-

management.  Jennmar also asserts that a genuine dispute exists as to whether they constitute the plaintiffs' joint employers based on each facility's individual management decisions.  On the other hand, the plaintiffs assert that all the defendants constitute a single enterprise given their similar manufacturing functions, that each defendant operates under common ownership and leadership, and that each affiliate shares a common business purpose.  Accordingly, I will deny summary judgment as to the joint liability claim.

### F.  BREACH OF CONTRACT AND QUANTUM MERUIT.

Under Virginia law, recovery under a quantum meruit claim may only be obtained absent an express contract.  *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Cap. Corp.*, 961 F.2d 489, 491 (4th Cir. 1992).  For this reason, I will assume the plaintiffs meant to raise their quantum meruit claim in the alternative.

According to the plaintiffs, Jennmar knew the plaintiffs were performing work activities when the system rounded down their time but still failed to pay them.  This argument implies that any rounding policy that does not pay employees for compensable time is a contractual breach.  As discussed, FLSA does not allow for recovery of compensable time if such time was de minimis.  29 C.F.R. § 785.47.  In any event, Jennmar does not adequately address the plaintiffs' breach of contract and quantum meruit claims in their briefing.  I will accordingly deny summary judgment as to these claims.

## G.  GOOD FAITH DEFENSES TO LIQUIDATED
## DAMAGES FOR ROUNDING VIOLATIONS.

Under the FLSA, employers may be liable for liquidated damages for failing to pay employees in a timely manner.  29 C.F.R. § 790.22(a).  However, if the employer demonstrates good faith and a reasonable basis for believing that its conduct did not violate the FLSA, the court may reduce or eliminate the liquidated damages.  29 U.S.C. § 260.  Employers are subjected to a "plain and substantial burden" when establishing good faith and reasonable grounds.  *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 357 (4th Cir. 1994).  Further, the employer must demonstrate "objective, not subjective, good faith."  *Regan v. City of Charleston*, 142 F. Supp. 3d 442, 464 (D.S.C. 2015) (citing *Clifton D. Mayhew, Inc. v. Wirtz*, 413 F.2d 658, 661–62 (4th Cir. 1969)).

Jennmar argues that the plaintiffs' rounding claims fail as the plaintiffs have not shown that they engaged in compensable work off the clock.  According to the plaintiffs, however, the issue at hand does not concern off-the-clock pre-shift work, but rather, hours that were recorded and not properly compensated pursuant to Jennmar's rounding practice.  Given this discrepancy, I will deny summary judgment as to a good faith defense to liquidated damages.

### H. WHETHER THE VWPA WAS KNOWINGLY VIOLATED FOR PURPOSES OF TREBLE DAMAGES AND CIVIL MONETARY PENALTIES.

Under the VWPA, treble damages can be awarded upon establishing that an employer knowingly failed to pay wages to an employee. Va. Code Ann. § 40.1-29(J). To act knowingly, a person must have actual knowledge of the information, or act with either deliberate ignorance or reckless disregard as to the veracity of the information. Va. Code Ann. § 40.1-29(K). Establishing that a person acted knowingly does not require proof of specific intent to defraud. *Id.*

The plaintiffs ask this court to adopt the Virginia Department of Labor and Industry's interpretation of the VWPA. Under this interpretation, if an employer is aware of the amount being paid to the employee, and if that amount was insufficient under the law, the employer acted knowingly. While I may look to this interpretation as guidance, it does not establish substantive law. *Nat'l Coll. of. Bus. & Tech., Inc. v. Malveaux*, 723 S.E.2d 270, 274 (Va. Ct. App. 2012).

As the plaintiffs acknowledge, there is no dispute as to whether Jennmar knew how much employees were being paid. Rather, the parties dispute whether the additional hours the plaintiffs worked constituted compensable time that would necessitate overtime pay. Such a finding is necessary to reach the further questions of whether Jennmar violated the VWPA, and if so, whether that violation was

knowing. I will deny summary judgment as to the alleged knowing violations of the VWPA.

## I. JENNMAR'S AFFIRMATIVE DEFENSES.

In their Partial Motion for Summary Judgment, the plaintiffs contend that the Court should grant summary judgment in their favor as to Jennmar's 35 affirmative defenses set forth in its Answer.

I have addressed the personal jurisdiction defense in this Opinion, as well as having previously addressed the argument that the Complaint fails to state a claim for which relief may be granted (the First, Second, and Twenty-First Defenses). *Stacy v. Jennmar Corp. of Va., Inc.*, 342 F.R.D. 215, 224–25 (W.D. Va. 2022).

The Third, Tenth, Eleventh, Twelfth, Sixteenth, Thirty-Third, and Thirty-Fourth defenses assert that Jennmar acted in good faith and did not knowingly violate the FLSA and state law. For the reasons stated herein, summary judgment for the plaintiffs will be denied as to these defenses. The Fourth, Fourteenth, Nineteenth, and Twenty-Sixth Defenses refer to the plaintiffs' burden of production. Again, summary judgment will be denied.

The Fifth Defense asserts that Jennmar is entitled to offset unpaid Virginia law wages allegedly owed by compensation paid to the plaintiffs in excess of the statutory minimum wages. Summary judgment is granted as to this defense.

Jennmar has withdrawn the Sixth Defense.

The Seventh Defense asserts that the plaintiffs are entitled to a jury trial only insofar as federal and Virginia law permit. The plaintiffs agree insofar as Jennmar is referring to liquidated damages under FLSA only, as the plaintiffs state that liquated damages under the VWPA are automatically awarded upon a finding of liability. Based on this response, I will grant summary judgment.

The Eighth Defense asserts that the plaintiffs brought the case without adequate factual basis or investigation. This defense bears similarly to the First Defense alleging that the plaintiffs failed to state a plausible claim, as addressed above. I will thereby grant summary judgment as to this defense.

The Ninth, Twenty-Seventh, and Thirty-Second Defenses plead equitable defenses. Jennmar does not point to anything in the record that would support a finding of a genuine dispute of material fact. Accordingly, summary judgment is granted as to these defenses.

The Thirteenth Defense asserts that Jennmar is not liable for failing to pay overtime for preliminary or postliminary activities, as the plaintiffs have not established that such activities were compensable. This is a factual matter to be settled at trial, and accordingly, summary judgment is denied as to this defense.

The Fifteenth Defense asserts that any additional compensation that may be owed to the plaintiffs is de minimis under the FLSA. Having found that this

compensation and accompanying time lost is not de minimis as a matter of law, summary judgment is granted as to this defense.

The Seventeenth and Eighteenth Defenses assert that this matter cannot proceed as a class or collective action. For the reasons stated in this opinion addressing decertification, summary judgment is granted as to this defense.

The Twentieth and Twenty-Fifth Defenses assert that the plaintiffs' claims fall outside of the applicable statutes of limitation. The plaintiffs contend that they are only seeking recovery for claims that accrued within the applicable statutes of limitation. Accordingly, summary judgment is granted in part to the extent that the corresponding claims are for compensation that accrued within the applicable statutes of limitation.

The Twenty-Second Defense asserts that the plaintiffs' claims are barred by documentary evidence because Jennmar's policies require that all employees be compensated for any work. Merely having a policy that prohibits unlawful conduct does not obviate the possibility that unlawful conduct will still ensue. Summary judgment is granted as to this defense.

The Twenty-Third and Twenty-Fourth Defenses disclaim Jennmar as an employer of the plaintiffs. Based on my analysis of Jennmar's joint liability, Jennmar's Motion for Summary Judgment is denied as to this claim.

The Twenty-Eighth Defense asserts that the plaintiffs' claims are barred by the laches. I will grant summary judgment as to this claim.

The Twenty-Ninth Defense asserts that the plaintiffs cannot recover prejudgment interest if they recover liquidated damages under the FLSA. The plaintiffs agree with this reading of the law, thus absolving any genuine dispute. Accordingly, summary judgment is granted as to this claim.

The Thirtieth Defense asserts that Jennmar is entitled to an off set with respect to any money paid to plaintiffs for any hours when they were not performing work for Jennmar. Jennmar points to no disputes of material fact regarding this defense and alludes to testimony at trial without describing any disputed facts. However, the plaintiffs have also not adequately described the facts supporting their position. Accordingly, summary judgment is denied to the plaintiffs as to this claim.

The Thirty-First Defense was withdrawn by Jennmar.

The Thirty-Fifth Defense is a reservation of rights to raise new affirmative defenses. With the close of discovery, there is no reason given to permit further affirmative defenses, although the possibility exists.

## VII.   CONCLUSION.

For the reasons as stated, it is **ORDERED** as follows:

1. The Motion for Decertification of the FLSA Collective Class and Rule 23 Class, Dkt. No. 117, is DENIED;

2.  The Motion to Exclude the Testimony of Richard Goldberg, Dkt. No. 123, is DENIED;

3.  The Motion for Sanctions, Dkt. No. 128, is GRANTED in part and DENIED in part;

4.  Defendants' Motion Summary Judgment, Dkt. No. 119, is DENIED; and

5.  Plaintiff's Motion for Partial Summary Judgment, Dkt. No. 121 is GRANTED in part and DENIED in part.

ENTER:   September 30, 2025

/s/  JAMES P. JONES
Senior United States District Judge